MATT NARANEN *et al.*, *Appellants*, v. CHARLES W. HARDERS *et al.*, *Respondents*.

Consolidated actions for personal injuries. Plaintiffs appeal from a judgment entered on a verdict in favor of the defendants.

*Ingram, Zelasko & Goodwin* and *Richard E. Goodwin,* for appellants Naranen.

*Lester Stritmatter,* for appellants Frankie.

*Schumacher & Charette* and *Robert L. Charette,* for respondents.

PEARSON, J.—This is an appeal by the plaintiffs, Matt Naranen and his wife, and Gust Frankie and his wife, from an adverse jury verdict and dismissal of their action for personal injuries and damages against the defendants Harders and Moyer. The action arose out of an automobile accident which occurred on November 27, 1965, shortly after 6 p.m., approximately 5 miles west of Aberdeen, Washington, on state highway 105.

On the same afternoon of the accident, the defendant, Harold Moyer, had purchased a new 1966 Chevrolet. Shortly before the accident, he and the defendant, Charles Harders, were testing the car and the latter was driving. The vehicle had been driven less than 30 miles without any difficulty. It was dark at the time, but not raining, although the pavement was damp. They proceeded westerly on state highway 105 to the approximate location of the accident, when the driver decided to make a U-turn in order to return to Aberdeen. He preceded this attempted maneuver by first pulling off on the right-hand shoulder to permit two west-bound vehicles to pass. Following this, the U-turn was commenced, but could not be completed without backing the vehicle. The defendant, Moyer, described the maneuver as follows:

Q All right. Then you tell me what happened.
A As he went to make the U-turn and got over, the wheel right at the edge of the drop-off, off the shoulder, and then he was going to back up. He put it in reverse to back up and it died right there.

Exactly where the vehicle stalled was in some dispute. Moyer testified, however, that they could not have pushed it forward to remove it from the driving lane "without pushing it out into the swamp," its front end being situated at the edge of the shoulder, and at a 45° angle to the edge of the shoulder. He testified that they tried to push the car

backward, but there was too much of a crown on the road and they were unable to do so. Their attempt to start the vehicle was described by Moyer:

> He put the car in drive and turned on the switch, that is what starts it, that is the starter, and it dimmed the lights down. So he let up and he put the lights on park and did the same thing over again, and all he got was a clicking sound out of it. So then he turned that off, put the lights back on bright, and that is where they were.

The defendants then got out of the car, lifted the hood, and checked the battery cables, which appeared in order. At this point an eastbound vehicle approached, slowed and passed them successfully. They then reentered the car, after which they heard a vehicle approaching from Westport and they could tell by the sound of the motor that it was "coming fast."

Moyer alighted from the vehicle a second time and ran up the road a "good hundred feet" to try to "flag him down." He stood in the middle of the eastbound lane and was wearing a "light" jacket. He was forced to jump out of the way, to avoid being struck. The vehicle, a 1961 Oldsmobile owned and driven by the plaintiff, Matt Naranen, came into collision with the stalled Moyer vehicle, causing injuries to Irene Naranen, who was thrown from the vehicle.

There were two guest passengers in the Naranen vehicle, plaintiffs Gust and Julia K. Frankie. Mrs. Frankie was injured when she was thrown from the vehicle. Separate lawsuits commenced by the Naranens and Frankies were consolidated for trial. Both defendants estimated that the Moyer vehicle was stalled for approximately 5 minutes prior to the collision.

The roadway where the accident occurred was level and straight, with visibility to the west of approximately ½ to ¾ of a mile. The stalled vehicle was situated at an angle estimated at 45°[1] by defendant's witnesses, to 90° by plaintiff's witnesses, and blocking a substantial portion of the eastbound lane. Both defendants testified that all of its

---

[1] To the edge of the roadway.

lights were on at the time of the accident, including the inside car lights. The state patrol officer, who arrived at the scene approximately 10 minutes after it occurred, testified that the lights on the Moyer vehicle were "very dim." The maximum speed limit on this highway was 60 miles per hour.

The plaintiffs-appellants were enroute to Portland at the time of the accident. Their car reached a speed of 65 miles per hour as it descended a hill, approaching the area where the Moyer car was stalled. Upon reaching the straight stretch and still ¾ of a mile from the stalled car, the plaintiff, Matt Naranen, observed the headlights of another vehicle approaching, dimmed his lights, and began to slow down. He observed no danger until he was about 175 feet from the stalled car. He saw no lights nor any obstruction until his headlights began to pick up the vehicle, at which time the oncoming car was too close to permit him to cross to the westbound lane. He unsuccessfully attempted to stop by applying his brakes.

The trial court submitted negligence and contributory negligence issues on the Naranen suit, and negligence only on the Frankie action. The jury found in favor of the defendants in both actions.

The plaintiffs assign error to the trial court's refusal to direct a verdict on the issue of primary negligence, contending that the facts established the negligence of both defendants as a matter of law. It is contended that RCW 46.61.560 was violated by the defendants and that such violation constituted negligence per se.

RCW 46.61.560 provides:

(1) Upon any highway outside of incorporated cities and towns no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the main-traveled part of the highway.

(2) This section shall not apply to the driver of any vehicle which is disabled while on the main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

The trial court submitted an instruction to the jury in the above statutory language, informing the jury that violation thereof would constitute negligence as a matter of law.

■ In determining whether or not there was an issue of fact for the jury as to the negligence of the defendants, we must accept as true that view of the evidence most favorable to the defendants. *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 397 P.2d 857 (1964).

In doing this, we must focus on the evidence having to do with subsection 2, namely, whether the evidence was sufficient to allow the jury to find that it was "impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

Both defendants testified that they could not move the car backward (in order to maneuver it off the roadway) because of the crown of the roadway. They both testified it could not be moved forward without the front wheels going over the edge of the shoulder and into the swamp. Plaintiff's witness, Wesley E. Berglund, an experienced highway civil engineer, in response to questions put to him by plaintiff's counsel, testified that he would "never have put either my front or back wheels . . . over the edge . . .", unless it was something he couldn't avoid. It was his personal opinion that he would not drive off the shoulder.

Plaintiffs argue that so long as it was physically possible to push the car off the driving lane, even were it to go into the drainage ditch and swamp, the defendants were under a duty to do so in order to excuse the negligence created by subsection 1.

Such a construction of the statute would, in our judgment, be untenable. We note that there have as yet been no Supreme Court decisions construing the statute in its present form.[2]

---

[2]The statute reached its present form in 1965 (Laws of 1965, Ex. Ses., ch. 155, § 64, p. 2315). It had formerly prohibited a person from leaving the vehicle on the traveled portion of the highway "when it is practicable to park or leave such vehicle standing off of the road or improved or main traveled portion of such highway . . . ". (Rem.

■ By plaintiff's contention, we are asked to construe the word "impossible" in its literal sense of "incapable of being done." Such a construction could, in our judgment, lead to absurd results if the roadway abutted a cliff or a lake or the like. We prefer to believe that the legislature intended the words "impossible" to mean "felt to be utterly impracticable" which is another acceptable definition. *Merriam-Webster Third Int'l Dictionary* 1136 (1969).

Implicit in the statute is some reasonable element of choice to avoid the absurdity of the extremes mentioned above.

We hold that the evidence was sufficient to warrant submission to the jury of the issue of defendant's negligence for violation of this statute, and we believe the trial court properly instructed the jury on this issue.

The plaintiffs, Naranen, contend that it was error for the trial court to submit the issue of their contributory negligence to the jury.

■ The rule in this regard was recently stated in *Poston v. Mathers,* 77 W.D.2d 329, 332, 462 P.2d 222 (1969):

> Before the trial court can remove the contributory negligence issue from the jury's consideration, the evidence must be such that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably prudent man would have exercised for his own safety under the circumstances.

■ Again, we must accept as true that view of the evidence most favorable to the defendants, giving the defendants the benefit of all reasonable inferences.

Contributory negligence had to be based upon excessive speed, a failure of plaintiff, Naranen, to make timely observation, or in his failure to avoid striking the vehicle by passing it to the left.

The plaintiff's own testimony established that he was

Sup. 1927, § 6362-47) The statute in that form was held not violated if there is proper excuse or a necessity for stopping an automobile upon the highway, and a reasonable effort is made to get it entirely off the road or as nearly so as circumstances would permit. *See Grubbs v. Grayson,* 165 Wash. 548, 5 P.2d 1033 (1931).

exceeding the speed limit as he approached the area where the accident happened. The defendant, Harders, testified that he observed no slackening in speed until the plaintiff applied the brakes when approximately 125 feet away from the stalled vehicle. State patrol officer Jack Regester testified that in his opinion 65 miles per hour was not a safe speed for the driving conditions existing on the evening of the accident.

The eastbound driver, Cal Peterson, testified that despite foggy weather conditions, he was able to pass the stalled vehicle after he observed its headlights and taillights.

The state trooper also testified that at 60 miles per hour a vehicle should be able to stop with good reaction time in 200 feet. The estimates of distances given by the various parties conflicted somewhat, but under one acceptable version, the plaintiff could have been in excess of 200 feet from the stalled vehicle when he observed the defendant Moyer in the roadway.

There was likewise testimony from the plaintiff Naranen, on cross-examination that the oncoming vehicle was of such distance away as he approached the stopped vehicle that there would have been an opportunity to drive into the westbound lane to avoid striking the stalled vehicle.

In our judgment, there was clearly evidence on which reasonable minds could differ as to whether or not the plaintiff was guilty of contributory negligence, and the issue was submitted to the jury under proper instruction.[3]

For a somewhat similar holding (but with the plaintiff and defendant reversed), see *Grubbs v. Grayson*, 165 Wash. 548, 5 P.2d 1033 (1931).

We should note also that plaintiff was given the benefit of a sudden emergency instruction[4] which could excuse his conduct after the presence of the obstruction became apparent.

---

[3]Washington Pattern Jury Instructions, 6 Wash. Prac., 70.05 (paragraph 1) at 261, and 12.06 at 91 (1967).

[4]WPI 12.02.

The plaintiffs have assigned as error the refusal of the trial court to give their proposed statement of the case which would in effect have particularized five different claims of negligence on the part of defendants, as alleged in their complaint, as well as outlining claims of the defendant by answer and the claims made in plaintiff's reply.

Instead of giving a detailed statement as requested, the trial court submitted the issues to the jury in the manner recommended by Washington Pattern Instruction 20.01, which the plaintiffs claim denied submitting their theory of the case to the jury on certain issues delineated in their allegations of negligence.

The comment to WPI 20.01 is appropriate. It states at 109:

This instruction, which sets forth the issues or claims which are properly supported by evidence, is preferable to the detailed résumé of the facts or evidence claimed or pleaded by each party which was often used under the old practice. See Wiehl, Instructing a Jury in Washington, 36 Wash.L.Rev. 378, 380 (1961). It must be remembered that the jury will have heard the general factual outline which is involved, and accordingly needs no specific instruction thereon in the written instructions on the law.

We might add that the attorneys have ample opportunity in opening statements and closing argument to point out to the jury the specific factual claims of negligence and contributory negligence they are making.

■ Stating the issues generally, as was done here, is not to be confused with the obligation of the trial court to submit specific instructions on a party's theory of the case on particular issues which are requested and which are supported by substantial evidence. *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964); *Woods v. Goodson,* 55 Wn.2d 687, 349 P.2d 731 (1960).

However, in this case plaintiffs did not request individual instruction on issues of negligence representing their theory on those issues. Instead, they reiterated claims of negligence as alleged in their complaint. Some of the alle-

gations were evidentiary and some were argumentative.[5] We do not believe the trial court erred in refusing the offered instruction. *See Kennedy v. Clausing,* 74 Wn.2d 483, 445 P.2d 637 (1968).

The instructions given by the trial court adequately present plaintiff's claim that defendants were negligent in obstructing the highway and in not acting reasonably after the vehicle stalled.

■ The plaintiffs have also assigned error to other instructions or portions of instruction given by the trial court. Since no exception was taken, those instructions became the law of the case and cannot be reviewed for the first time on appeal. *Whipple v. Lambert,* 73 Wn.2d 952, 442 P.2d 266 (1968).

Taken as a whole, we believe the instructions given by the trial court were concise, correct, impartial and accurately submitted to the jury the issues raised by the evidence.

The judgment is affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.

[5]Statement of Facts 385.

"The plaintiffs claim that the defendants were negligent in one or more of the following respects:

"1. In not pushing or attempting to push the automobile off the travelled portion of the highway, or as far off of the travelled highway as possible;

"2. In taking no emergency procedures at the time their automobile blocked, or substantially blocked, the lane of traffic;

"3. In staying at the site of their automobile after one car had managed to avoid them by swerving into the other lane of traffic and even after they observed another car approaching in their lane of travel, until it was too late to effectively warn the approaching car;

"4. In running up the center of the lane of travel of plaintiff NARANEN's car toward the plaintiff NARANEN's car at such time as they finally decided to take action to warn oncoming traffic;

"5. In having no lights lit on the car, or if the lights were lit, then in relying upon said lights for warning that an automobile was blocking the lane of traffic, and particularly if the defendants' vehicle was perpendicular to the lane of traffic, and in any event, since the defendants' testimony indicates and the defendants thought that the problem was with their battery, the source of energy to those lights."