[No. 10754–2–I.   Division One.   July 23, 1984.]

JUDY L. GAMMON, *Individually and as Personal Representative,* ET AL, *Appellants,* v. CLARK EQUIPMENT CO., ET AL, *Respondents.*

*James D. Burns, Burns, Schneiderman & Davis, Douglass A. North,* and *Hennings, Maltman, Webert & Reed,* for appellants.

*William R. Hickman, Robert C. Dickerson II,* and *Reed, McClure, Moceri & Thonn,* for respondent Clark Equipment Co.

*Philip A. Talmadge, Robert P. Piper,* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for respondent AA Rentals.

DURHAM, C.J.—Judy L. Gammon appeals from the denial of her motion for a new trial or judgment notwithstanding the verdict in connection with this wrongful death action. She raises several instructional, procedural and evidentiary errors, and also alleges that the jury's answers to the special

interrogatories were inconsistent. We remand for a new trial as to respondent Clark Equipment Company only.

On October 13, 1978, Richard Gammon was killed when a Bobcat 720 loader, which he was using in conjunction with a backhoe to clear a house foundation, tipped over on its side. Although there were no witnesses to the accident, it appears that the backhoe lift arms were fully extended, rendering the Bobcat unstable. Two laborers heard a loud noise, ran to the other side of the house, and found Gammon impaled by the backhoe stabilizers. Gammon died on October 15.

The Bobcat and backhoe were manufactured by Clark Equipment Company, distributed by Star Machinery Company, and leased by AA Rentals of Bothell. Gammon rented the Bobcat from AA Rentals on October 12, and was given instructions by an employee regarding the Bobcat's operation. Gammon was not, however, given a copy of the owner's manual.

In December 1978, Gammon's wife, Judy Gammon, brought this wrongful death action against Clark, Star Machinery and AA Rentals. By way of amended complaint, Gammon asserted causes of action based upon negligence, strict liability, and breach of implied warranties. The case was tried to a jury, which returned a verdict in the form of answers to interrogatories.[1] The jury found that Clark and Star Equipment were not negligent, and that they had supplied a product which was reasonably safe. The jury found that AA Rentals was negligent in failing to provide adequate warnings, but that such negligence was not the cause of Gammon's injuries. The jury also found that Gammon was 90 percent contributorially negligent, but failed to assign the other 10 percent.

Gammon unsuccessfully moved for a new trial or for judgment notwithstanding the verdict, and this appeal followed.

---

[1]The implied warranty theory was not submitted to the jury.

## VIOLATION OF DISCOVERY ORDER

Gammon first assigns error to the trial court's denial of her motion for a new trial based upon Clark's failure to comply with a pretrial discovery order to produce certain accident reports. Gammon contends that the trial court's sanction for the alleged discovery abuse—a $2,500 award of terms against Clark—was inadequate under the circumstances, and that a new trial at this point is the only effective remedy. We agree.

The circumstances surrounding Clark's refusal to turn over the accident reports are as follows. Gammon submitted her first set of interrogatories to Clark on May 9, 1979, over 2 years before trial. Interrogatory 20 asked Clark if it had notice of any personal injuries arising out of the use of "any similar or substantially similar products" which it manufactured, designed or distributed.[2] Clark answered by objecting to the scope of the interrogatory, and submitted five accident reports that described similar accidents involving similar equipment.

Nothing happened during the next 2 years, and Clark made no attempt to supplement its answers to the interrogatory or to provide additional accident reports. *See* CR 26(e). In early June 1981, however, during the depositions of Clark's design and safety engineers, Gammon received information suggesting that Clark had not fully answered interrogatory 20. It was ascertained that the Bobcat 720 had been manufactured since 1972, that the Bobcat line of loaders as a whole are similar in style and operation, and

---

[2]Moreover, as to each such notice, the interrogatory required Clark to provide the following information:

(a) The name and address of the injured party;

(b) the date and character of the notice;

(c) a description of the type of product involved;

(d) a description of the claimed mechanical failures involved;

(e) a description of the injuries sustained;

(f) whether or not a lawsuit was filed indicating the court, document number, and the names and addresses of the parties, including the plaintiff's counsel;

(g) the resolution of the litigation;

(h) any and all paperwork concerning the notices or the resolution.

that approximately *five accidents per year* had been reported to Clark.[3] Based upon the deposition testimony, Gammon moved on June 16, 1981 for an order compelling Clark to respond fully to interrogatory 20. On June 24, 1981, Judge Sullivan ordered Clark to produce "*all* accident reports and reports of accidents involving a tip over of *any* Bobcat machine ever produced by [Clark]." (Italics ours.) Clark was also ordered to "answer fully and completely Interrogatory No. 20". Clark produced about 50 additional accident reports in response to this order. Ninety–five percent of the documents produced were documents described as "accident summaries" which were an abbreviated form of accident report containing minimal information about the accident involved. The rest of the documents were a more comprehensive accident report known as a "product accident report form."

When trial began on July 6, 1981 and before the jury was empaneled, Gammon's counsel advised the trial judge that he still did not believe that Clark had turned over all of its accident reports involving the tipping over of a Bobcat or similar equipment. Counsel's suspicion was fueled when, purely by happenstance, a Mr. Reimers came to his office and informed him that he had also experienced a tip–over accident involving a Bobcat. Neither an accident summary nor a product accident report form for the Reimers accident was included in Clark's initial response to interrogatory 20. Gammon did, however, receive an accident summary for the Reimers accident in response to Judge Sullivan's order. In addition, Gammon's counsel stated that because he had "called around the United States" he was aware of accidents for which no reports had been produced. At this point, Clark's counsel did not deny that additional reports existed, but took the position that the reports were not relevant because they involved different equipment

---

[3]Apparently, Clark's counsel would not allow the deponents to respond to any of Gammon's inquiries regarding the accidents unless they involved identical pieces of equipment.

being operated under different circumstances.

On July 7, Gammon's counsel raised anew the discovery issue, and complained about having received only the accident summary for the Reimers accident. He then informed the court that AA Rentals' counsel had shown him a more comprehensive product accident form for the Reimers accident. The report was turned over to Gammon's counsel, and the trial court noted that sanctions could be imposed later if bad faith became evident.

On July 8, following jury selection, Gammon's counsel again raised the issue of Clark's noncompliance. Counsel contrasted the skimpy Reimers accident summary with the product accident report form produced by AA Rentals, and asked the court to order Clark to turn over all accident reports. Counsel also requested terms in the event of noncompliance. In order to resolve the issue, Clark's counsel offered to have the Clark employee who reviewed the reports testify as to how they were maintained. The employee indicated that Clark maintained two accident "books" in which both the accident summaries and product accident report forms were filed. The court ordered that both books be flown out immediately from Clark's headquarters in North Dakota. Gammon did not move for a continuance.

After examining the accident books over the weekend, Gammon's counsel complained that the indices to the accident books referred to accidents for which there were no accident reports, including an accident involving a Bobcat 720. Moreover, during a deposition taken over the weekend of Mr. Leroy Brooks, Clark's product safety manager, Gammon learned that two boxes of accident reports had been turned over to Clark's attorneys before the weekend. Clark's counsel indicated that he had the boxes of reports in the courtroom, and the trial court ordered Clark to allow Gammon's counsel to inspect or copy them. Gammon's counsel suggested that the reports had been deliberately withheld, and requested terms. The court stated that it appeared that Clark was unilaterally determining what

reports were relevant, but reserved the matter of sanctions until after trial. Gammon's counsel did not object to this approach, but moved for a new trial following the jury verdict. The court denied the motion, and instead awarded $2,500 terms against Clark.

The Supreme Court has noted that the aim of the liberal federal discovery rules is to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 2 L. Ed. 2d 1077, 78 S. Ct. 983 (1958). The availability of liberal discovery means that civil trials

> no longer need be carried on in the dark. The way is now clear . . . for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

*Hickman v. Taylor*, 329 U.S. 495, 501, 91 L. Ed. 451, 67 S. Ct. 385 (1947).

■■ This system obviously cannot succeed without the full cooperation of the parties. Accordingly, the drafters wisely included a provision authorizing the trial court to impose sanctions for unjustified or unexplained resistance to discovery. CR 37 authorizes the imposition of such sanctions "as are just," CR 37(b)(2), including the striking of pleadings and the entry of a default judgment. *See Pamelin Indus., Inc. v. Sheen–U.S.A., Inc.*, 95 Wn.2d 398, 622 P.2d 1270 (1981). Although the choice of sanctions is within the discretion of the trial court, *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976), the particular sanction imposed should at least insure that the wrongdoer does not profit from his wrong. *See Tietjen v. Department of Labor & Indus.*, 13 Wn. App. 86, 93, 534 P.2d 151 (1975).

Violation of a discovery order without a reasonable excuse constitutes a willful violation of the discovery rules. *See Anderson v. Mohundro*, 24 Wn. App. 569, 574, 604 P.2d 181 (1979). Our review of the discovery process in this case leaves little doubt that there has been willful noncompliance on the part of either Clark or Clark's attorneys. No

reason was given for the failure to respond to interrogatory 20 and to provide all accident reports involving Bobcat tip–overs.

As previously noted, although Clark received interrogatory 20 over *2 years* before trial, the vast majority of accident reports that were ultimately produced were not produced until the trial was already underway. Clark's initial response to interrogatory 20 was to turn over only five accident reports. Clark obviously had not fully answered the interrogatory at that point, as it produced 50 more accident reports in response to Judge Sullivan's order. Moreover, Clark persisted in its dilatory conduct after trial began, when the existence of *two boxes* of additional reports was revealed only through Mr. Brooks' deposition.

Clark's unwillingness to turn over all accident reports involving Bobcat tip–overs was apparently a product of its insistence throughout the proceedings that it was required to produce only reports of accidents that occurred under identical circumstances and involved identical types of equipment. The trial judge himself noted that "it appears Clark made its own determination of what it thought was relevant." By any fair reading, interrogatory 20 required Clark to apprise Gammon of any reported accidents involving similar products, even if the accidents did not involve tip–overs. Judge Sullivan's order required Clark to produce *all* accident reports involving a tip–over of any Bobcat machine and to fully answer interrogatory 20. It was not up to Clark to unilaterally determine what was relevant to Gammon's claim. Clark's remedy, if any, was to seek a protective order pursuant to CR 26(c).[4]

---

[4]The fact that many of the accidents reported may have involved different circumstances—*i.e.,* forward tip–overs instead of side tip–overs, different terrain, etc.—does not absolve Clark of its duty to afford complete discovery. CR 26(b)(1) provides in part that:

It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears *reasonably calculated to lead to the discovery of admissible evidence.*

(Italics ours.)

It may very well be that timely answers to the interrogatories and production of the accident reports would have made no difference. That is not for us to decide. It is precisely because we cannot know what impact full compliance would have had, that we must grant a new trial. As the Third Circuit stated in *Seaboldt v. Pennsylvania R.R.*, 290 F.2d 296, 300 (3d Cir. 1961):

> [I]t cannot be stated with certainty that all of this would have changed the result of the case. But, as said by the Supreme Court, a litigant who has engaged in misconduct is not entitled to "the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent." Minneapolis, St. Paul & S.S. Marie Ry. Co. v. Moquin, 1931, 283 U.S. 520, 521–522, 51 S.Ct. 501, 502, 75 L.Ed. 1243.

*Accord, Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346, 50 A.L.R. Fed. 914 (5th Cir. 1978); *Rock Island Bank & Trust Co. v. Ford Motor Co.*, 54 Mich. App. 278, 220 N.W.2d 799, 801 (1974).

An award of $2,500 is cheap at twice the price in the context of a $4.5 million wrongful death case. Approval of such a de minimis sanction in a case such as this would plainly undermine the purpose of discovery. Far from insuring that a wrongdoer not profit from his wrong, minimal terms would simply encourage litigants to embrace tactics of evasion and delay. This we cannot do.

Clark contends that Gammon cannot now object to the trial court's choice of sanction because she did not request a continuance or move for a mistrial. This argument is meritless. It was Clark's responsibility to timely answer interrogatory 20 and produce the accident reports. Requiring Gammon to disrupt her trial presentation to accommodate Clark would reward noncompliance. *See Lampard v. Roth*, 38 Wn. App. 198, 684 P.2d 1353 (1984). A new trial is the only practical remedy at this stage.

### JURY INSTRUCTIONS

Gammon next assigns error to several instructional matters. Because these issues may appear again on retrial, we

shall consider them here. Gammon assigns error to the court's refusal to give her proposed instruction 2 in addition to instruction 6, the burden of proof instruction. Instruction 6 reads, in part, as follows:

The plaintiff has the burden of proving each of the following propositions:

A. With respect to the plaintiff's claims that defendants were negligent,

First, that one or more of the defendants acted, or failed to act, *in one of the ways claimed by the plaintiff* and that in so acting, or failing to act, one or more of the defendants was negligent;

Second, that Mr. Gammon was injured and the injury resulted in pecuniary loss to the plaintiff; and

Third, that the negligence of one or more of the defendants was a proximate cause of the pecuniary loss to the plaintiff.

(Italics ours.)

Gammon excepted to this instruction on the basis that it did not individually set forth her theories of negligence; *i.e.,* failure to give adequate directions for use of the machine, failure to warn of dangers, failure to provide safe equipment, and failure to design safe equipment. Accordingly, Gammon contends that the trial court should have given her proposed instruction 2 because "it explains what the basis is for the 'plaintiff's claims that defendants were negligent.'"

Each party to a lawsuit is entitled to have his theories presented to the jury by proper instructions if evidence to support them exists. *Egede–Nissen v. Crystal Mt., Inc.,* 93 Wn.2d 127, 135, 606 P.2d 1214 (1980). When there is a request for an appropriate instruction that relates the principles of law involved to the specific factual issues of the case, it is not enough that the instructions set forth the law in a general way. *See, e.g., Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 435, 392 P.2d 317 (1964); *Pearce v. Motel 6, Inc.,* 28 Wn. App. 474, 480, 624 P.2d 215 (1981); *Kiemele v. Bryan,* 3 Wn. App. 449, 452, 476 P.2d 141 (1970); *Naranen v. Harders,* 1 Wn. App. 1014, 1021, 466 P.2d 521 (1970). *Accord,*

WPI 20.01, Comment at 120. As stated by Judge Wiehl:

In striving for simplicity of instruction on the issues, one point is apt to be overlooked. In instructing on the issues of a negligence case, the trial court should include reference to *all* specific acts of negligence relied upon by each party.

Wiehl, *Instructing a Jury in Washington,* 36 Wash. L. Rev. 378, 381 (1961). Thus, although it is generally true that instructions are sufficient if they allow a party to argue his theory of the case, accurately state the law and are not misleading, *Crossen v. Skagit Cy.,* 100 Wn.2d 355, 360, 669 P.2d 1244 (1983), a party is entitled to an instruction as to the particular acts of negligence alleged if there is evidence to support them. *Woods v. Goodson,* 55 Wn.2d 687, 689–90, 349 P.2d 731 (1960).

Here, Gammon based her negligence claim upon several theories, principally the defendants' failure to provide adequate warnings and Clark's failure to design a safe machine. These acts also formed the basis for her cause of action in strict liability. While instruction 6 distinguished these theories for purposes of Gammon's products liability claim, it did not do so for purposes of her negligence claim. The instruction merely stated that Gammon had the burden of proof to show that the defendants were negligent "*in one of the ways claimed by the plaintiff*". Thus, Gammon was entitled to a more specific "issues" instruction.

Nonetheless, the trial court did not err in refusing Gammon's proposed instruction 2, because it had no duty to accept an incorrect instruction. *See Crossen,* 100 Wn.2d at 360; *Jones v. Robert E. Bayley Constr. Co.,* 36 Wn. App. 357, 361, 647 P.2d 679 (1984). Gammon's theory for including proposed instruction 2 is that the instructions as given did not separately set forth her theories of negligence. However, the proposed instruction itself does not indicate that the four acts listed constitute alternative bases for a finding of negligence. Indeed, when read as a whole, the instruction appears to relate to Gammon's products liabil-

ity theory.[5] Because the instruction fails to perform the function attributed to it by Gammon, the trial court did not err in refusing it.

Gammon next assigns error to the court's refusal to give her proposed instruction 10, which reads:

> You are instructed that a company that sells or supplies a product that is not reasonably safe in some manner for the user of said product, is subject to liability for harm thereby caused to the user. This law applies although the seller has exercised all possible care in the preparation and sale of the product.

Gammon argues that the instructions as given did not explain that liability could be based on providing an unreasonably dangerous product notwithstanding the defendants' exercise of reasonable care.

Although proposed instruction 10 correctly identifies this major distinction between strict liability and negligence, the trial court did not err in refusing it. Taken together, the court's instructions accurately stated the law

---

[5]The relevant portion of proposed instruction 2 states:

The plaintiffs claim that the defendants caused the death of Richard Gammon *by providing a product for Mr. Gammon's use that was not safe for his use.*

In *said claim,* plaintiff makes the following allegations, any one of which, if proven, would be sufficient to sustain plaintiff's claim.

1. That defendants failed to give adequate directions to the decedent in the proper usage of the equipment.

2. That defendants failed to give adequate warnings to the decedent of the dangers of this equipment.

3. That defendants were negligent in not providing equipment that was safe for decedent's use.

4. That defendant, Clark Equipment, Inc. failed to design their equipment in a way that could have prevented the accident herein.

(Italics ours.)

The first sentence of this instruction indicates that Gammon premises the defendants' liability on providing a product "that was not safe". The next sentence then states that the listed theories of recovery are raised in support of "said claim". "[S]aid claim" obviously refers to Gammon's allegation that the defendants provided an unsafe product. Providing an unsafe or unreasonably dangerous product does not itself constitute negligence, but does give rise to a cause of action in strict products liability. Thus, in the context of this instruction, the specific acts listed appear to be alternative bases for Gammon's strict liability claim.

of strict liability, and in no way suggested that recovery under a strict liability theory requires proof of negligence. Gammon was not precluded from emphasizing the distinction between strict liability and negligence to the jury. *See Braxton v. Rotec Indus., Inc.,* 30 Wn. App. 221, 228, 633 P.2d 897 (1981) (where instructions as given do not place any burden on plaintiff to prove negligence in strict liability case, a specific instruction that negligence need not be shown is unnecessary).[6]

## Seatbelt Evidence

Gammon next assigns error to the trial court's refusal to grant her motion in limine to exclude any evidence regarding the availability or use of a seatbelt in the Bobcat loader. Specifically, the motion encompassed

> any evidence regarding a seat belt, including but not limited to, the decedent's failure to use a seat belt, the availability of a seat belt, instructions or warnings regarding use of a seat belt, and/or injuries or damages resulting from use or non–use of a seat belt.

The motion, argued extensively before trial, was based upon *Amend v. Bell,* 89 Wn.2d 124, 570 P.2d 138, 95 A.L.R.3d 225 (1977), which held that evidence regarding the plaintiff's use of a seatbelt in an automobile negligence case is inadmissible. The trial court denied the motion in part on the basis that it was not clear that *Amend* applies to accidents involving industrial equipment such as the Bobcat. Thus, Mr. James Bauer, a vice–president of Clark and chief designer of the Bobcat 720, was allowed to testify that Mr. Gammon would not have died had he been wearing his seatbelt.

The granting or denial of a motion in limine is within the discretion of the trial court, subject only to review for abuse. *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 91, 549 P.2d 483 (1976). The motion

---

[6]Gammon also argues that the alleged instructional errors are manifest in the jury's inconsistent answers to the special interrogatories. In light of our disposition of the case, we need not address this issue.

should be granted if (1) it describes the evidence objected to with sufficient specificity to enable the trial court to determine that it is *clearly inadmissible;* (2) the evidence is so prejudicial that the movant should be spared the necessity of calling attention to it by objecting when it is offered; and (3) the trial court is given a memorandum of authorities showing that the evidence is inadmissible.[7] *Fenimore,* 87 Wn.2d at 91. If the trial court denies the motion and advises the losing party to reassert his objection once the evidence is offered, the losing party is not deemed to have a standing objection and must reassert it at trial. *State v. Koloske,* 100 Wn.2d 889, 895, 676 P.2d 456 (1984); *Fenimore,* 87 Wn.2d at 92.[8]

Here, the trial court did not abuse its discretion in denying the motion. As noted above, Gammon's motion sought to exclude "*any* evidence regarding a seatbelt". *Amend v. Bell, supra,* upon which the motion was based, held only that evidence that the plaintiff was not *wearing* a seatbelt should be excluded. *Amend,* 89 Wn.2d at 134. Accordingly, even if *Amend* were deemed applicable outside the automobile negligence context, it is far from clear that *Amend* would render inadmissible evidence regarding the availability of a seatbelt, or regarding warnings to use a seatbelt. Obviously, such evidence would be of crucial importance in determining if the Bobcat was reasonably safe. As it cannot be said that the evidence sought to be excluded by Gammon's motion was clearly inadmissible, the trial court did not abuse its discretion in denying the motion.

Finally, Gammon assigns error to the exclusion of a portion of a videotape showing the Bobcat being tested, and also to certain expert testimony. We find no error.

The judgment is reversed and the case is remanded for a

---

[7]The motion itself states that a memorandum of authorities was filed with the court, although one does not appear in the record.

[8]Gammon does not assign error to the admission of Bauer's testimony, the evidence that was sought to be excluded by the motion in limine. Accordingly, we consider only the court's refusal to grant the motion in limine.

new trial as to respondent Clark. We affirm as to respondent AA Rentals.

CALLOW and ANDERSEN, JJ., concur.

Reconsideration denied September 6, 1984.

Remanded by Supreme Court to the Court of Appeals December 7, 1984.