*760 OPINION OF THE COURT
ALDISERT, Circuit Judge.
Defendant Bobcat Company[1] appeals from a judgment entered by the District Court for the Western District of Pennsylvania on a jury verdict finding Bobcat fully liable for injuries sustained by Thomas Altman in an accident involving a Bobcat Model 709 backhoe attachment. Following a seven-day trial, the jury found Bobcat’s negligence to be the sole cause of Altman’s injuries and awarded $2,991,337.00 in damages to Plaintiffs Thomas and Roxana Altman. The District Court denied Bobcat’s motion for a new trial, and this appeal followed.
Bobcat urges this Court to reverse the judgment below and order a new trial, contending that: (1) the District Court should have ordered a mistrial because Juror 73’s trial misconduct substantially prejudiced Bobcat; (2) the Court committed prejudicial error when it permitted the jury to view a computer animation depicting the Model 709 backhoe attachment and feasible alternative designs; and (3) the Court committed prejudicial error when it permitted the Altmans to cross-examine a key Bobcat witness using an “unrelated” case from the Washington Court of Appeals. We have considered each of these contentions and will affirm the decision of the District Court.[2]
I.
Because the parties are familiar with the facts and proceedings in the District Court, we will recite them only as necessary to the discussion.
Thomas Altman, a hazard responder for First Energy, was working with a First Energy crew to locate and repair damaged underground electrical wires. Altman’s coworker, Gregory Muscarella, was operating a Bobcat Model 863G skid-steer loader with a Bobcat Model 709 backhoe attachment. While Altman was standing in the swing zone of the backhoe attachment, Muscarella inadvertently activated the backhoe’s control lever with his knee. The backhoe’s bucket rotated 180 degrees to the right and struck Altman in the head, causing irreversible brain damage.
Mr. and Mrs. Altman sued Bobcat and went to trial on two theories of liability— negligent design and negligent failure to warn. Specifically, the Altmans alleged that Bobcat negligently designed the backhoe’s operator compartment by placing an unguarded operational control lever at knee height and in such close quarters that inadvertent activation was inevitable. The Altmans also alleged that Bobcat negligently failed to warn operators that the backhoe’s bucket and swing arm could pivot even after the operator released the hand controls to stop operation. On April 7, 2008, the jury found Bobcat’s negligence to be the sole cause of the Altmans’ injuries and returned a $2,991,337.00 verdict in their favor. Final judgment was entered on April 8, 2008. On April 21, 2008, Bobcat filed a motion for a new trial, which was denied on July 14, 2008, 2008 WL 2779301. Bobcat timely appealed on July 18, 2008.
II.
Bobcat contends that the District Court should have declared a mistrial after learning that Juror 73 conducted independent research during the trial by sitting in the cab of what she believed to be a Bobcat machine. During deliberations, Juror 73 described her experience to other jurors and reported that the Bobcat’s operator compartment was “tight.” Almost imme *761 diately, the jury foreperson notified Chief Judge Ambrose, who dismissed Juror 73 and conducted voir dire of the remaining jurors. After questioning each juror individually, the Judge “did not find any of the remaining jurors to be biased, prejudiced or unable to render an impartial verdict based on the statements of Juror 73.” (App.37.) Bobcat disagrees, and contends that we should order a new trial because Juror 73’s statements “substantially prejudiced Bobcat.” (App.20.)
“[E]very litigant who is entitled to trial by jury is entitled to an impartial jury, free to the furthest extent practicable from extraneous influences that may subvert the fact-finding process.” Waldorf v. Shuta, 3 F.3d 705, 709 (3d Cir.1993). When jurors obtain extrinsic information during jury deliberations, a new trial is warranted if the objecting party “likely suffered substantial prejudice as a result of the jury’s exposure to the extraneous information.” United States v. Lloyd, 269 F.3d 228, 238 (3d Cir.2001) (citation and quotation omitted). Nevertheless, a new trial is not required if the jury can remain impartial and unprejudiced and can confine its deliberations to the record evidence. Waldorf, 3 F.3d at 709. Thus, when “the trial court learns that [the jury] may have received extra-record information with a potential for substantial prejudice, [it] must determine whether the members of the jury have been prejudiced.” Gov’t of V.I. v. Dowling, 814 F.2d 134, 141 (3d Cir.1987). We have long expressed a preference for individual voir dire questioning of each potentially tainted juror. Id. at 137.
We accord “great deference to the trial judge’s wide discretion in using voir dire to determine the presence or absence of prejudice.” Id. Consequently, we employ an abuse-of-discretion standard to review both the District Court’s conduct of voir dire and its determination that the jurors had not been prejudiced. Waldorf, 3 F.3d at 710. Under our deferential review, a district court need not pursue any specific line of questioning on voir dire. Indeed, “any method is sufficient provided it is probative on the issue of impartiality.” Id. (citations omitted). This deferential standard places a heavy burden on Bobcat, which must demonstrate that the District Court abused its broad discretion in determining that the jurors would remain impartial.
We are satisfied that the District Court did not abuse its discretion in conducting voir dire or concluding that Juror 73’s misconduct would not prejudice the proceedings. After it learned of the misconduct, the Court immediately dismissed Juror 73 (App.366-368) and conducted voir dire of the remaining jurors (App.368-385). Consistent with Waldorf, the Court’s questions elicited testimony probative of the jurors’ impartiality. See Waldorf, 3 F.3d at 710. The jurors each testified that Juror 73’s statements would neither change nor influence then' opinions and that they could disregard completely Juror 73’s improper statements.[3] Moreover, in light of the Court’s broad discretion to conduct voir dire using “any method” aimed at discovering prejudice, we have no criticism of the Court’s decision to permit counsel to probe the prejudice issue with their own questions. See id. On this record, we determine that the Court did not abuse its *762 discretion in either its conduct of voir dire or its conclusion that the jurors had not been prejudiced.
Contrary to Bobcat’s contention, the Court’s voir dire of the jury foreperson (Juror 6) did not suggest that one or more jurors feared that Juror 73’s comments would undermine their impartiality. Bobcat reads Chief Judge Ambrose’s colloquy with Juror 6 to suggest that one juror subjectively believed that she had been prejudiced by Juror 73’s statements:
JUROR NO. 6: It was right at that one point [during Juror 73’s explanation of Juror 73’s encounter with a Bobcat machine] where one of the other jurors said she felt that was inappropriate, given the boundaries that we were given, and not to discuss any of the particulars of the case, and felt that this was something that might have swayed her opinion one way or another and asked for me to bring it forward to the Judge.
(App. 368 (emphasis added).) Absent the benefit of subsequent clarification, we might agree. Unfortunately for Bobcat, Juror 6 immediately clarified that no member of the jury panel indicated to Juror 6 that Juror 73’s statements would sway his or her opinion. (App.369-370.) We omit the relevant excerpts, but we have reviewed the transcript and uncover no evidence of subjective prejudice. (App.368-372.) We observe also that no juror’s voir dire statement corroborates Bobcat’s subjective prejudice theory, confirming our view that this theory lacks merit.
We are unpersuaded by Bobcat’s remaining arguments and dismiss them with little elaboration. Bobcat urges that we should presume prejudice in cases involving juror experiments. We disagree, and note that this Court has declined to adopt such a presumption in cases like this, where circumstances are not “sufficiently aggravated.” Waldorf, 3 F.3d at 711 n. 6.
Bobcat additionally contends that the District Court should have determined that Juror 73’s statements were so fundamentally prejudicial that the jurors could not, as an objective matter, disregard them. We disagree. We have held that “absen[t] ... an examination designed to elicit answers which provide an objective basis for the court’s evaluation, merely ... obtaining [jurors’] assurances of impartiality is insufficient to test that impartiality.” Id. at 712 (citation and quotation omitted). Contrary to Bobcat’s contention, the District Court’s prejudice inquiry did not rely on the jurors’ bare and subjective assurances of their own impartiality. The judge asked each juror what she heard Juror 73 say, whether any other juror was exposed to the extraneous information and whether each juror subjectively believed she could disregard the remarks. (App.346-383.) The judge listened to the jurors’ responses, observed their demeanors and determined that each would remain impartial. We believe the Court’s questions afforded an objective basis for its evaluation of prejudice and recognize that the District Court was in a superior position to assess the prejudicial effects of Juror 73’s misconduct.[4] We determine that Chief Judge *763 Ambrose acted well within her discretion, and we will defer to her conclusion that the jury had not been prejudiced.
III.
Bobcat next challenges the Court’s decision to allow the jury to view a computer animation depicting the Bobcat and backhoe attachment and alternative designs. At trial, the Altmans’ expert Christopher Ferrone used a computer-animated backhoe operator and Model 709 to explain why he believed Model 709’s design created a risk of inadvertent activation. The animation superimposed hypothetical design modifications over Model 709’s existing design to suggest how that risk might be eliminated.
The District Court overruled Bobcat’s objections at trial, which alleged that the animation was unduly prejudicial, misleading, irrelevant, lacked foundation, and amounted to an improper accident reconstruction. In this appeal, Bobcat contends that the evidence was “unfairly prejudicial” under Rule 403 and should not have been admitted without foundational evidence that the “simulation was substantially similar to the facts of the case.” (Appellant’s Br. 36.) Because evidentiary rulings are committed to the sound discretion of the district court, we review for abuse of discretion. We will reverse a trial judge’s decision to admit or exclude evidence under Rule 403 only if it was “arbitrary and irrational.” McKenna v. City of Philo., 582 F.3d 447, 461 (3d Cir.2009) (citation and quotation omitted). That demonstrably was not the case here.
A district court has discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of “unfair prejudice” or “misleading the jury.” See Rule 403, Federal Rules of Evidence. In applying Rule 403 to visual demonstrations, we have determined that depictions that appear to “recreate” an accident are significantly more likely to confuse the jury than depictions which merely “illustrate principles forming an expert’s opinion.” Hinkle v. City of Clarksburg, 81 F.3d 416, 425 (4th Cir.1996); Harkins v. Ford Motor Co., 437 F.2d 276, 278 (3d Cir.1970). Thus, for demonstrative evidence closely resembling the actual accident, courts generally require the proponent to establish that the demonstration shares substantial similarity with accident conditions. E.g., McKnight By & Through Ludwig v. Johnson Controls, 36 F.3d 1396, 1402, 1403 (8th Cir.1994). By contrast, if a demonstration does not appear to recreate the accident, Rule 403 generally does not require a foundational showing of similarity -with accident conditions. Gilbert v. Cosco, Inc., 989 F.2d 399, 402 (10th Cir.1993); Champeau v. Fruehauf Corp., 814 F.2d 1271, 1278 (8th Cir.1987); cf. Harkins, 437 F.2d at 278. The test is “not one of labels,” but “whether the demonstration is sufficiently close in appearance to the original accident to create the risk of misunderstanding by the jury, for it is that risk that gives rise to the special requirement to show similar conditions.” Fusco v. Gen. Motors Corp., 11 F.3d 259, 264 (1st Cir.1993).
The District Court concluded, and we cannot disagree, that the Altmans’ computer animation was admissible under Rule 403 without a foundational showing of similarity.[5] The Court carefully considered Bobcat’s objection (App.226), determined that unfair prejudice or confusion could be mitigated by cross-examination and limiting jury instructions (App.228), and concluded that “the jury understands it is not an accident reconstruction” (App.228-229). *764 We agree. The Altmans’ depiction — a series of sketches interspersed -with brief animations — is not at all lifelike. It clearly illustrates Ferrone’s testimony and does not appear even remotely to be a recreation of the accident. (App.551.) To remove all doubt, the Court instructed the jury that the animation was not a recreation and highlighted differences between the animation and the facts as adduced at trial. (Appellee’s Br. 53.) After reviewing the record and the evidence itself, we determine that the depiction evidence was not “sufficiently close in appearance to the original accident to create the risk of misunderstanding by the jury” or prejudice to Bobcat. Fusco, 11 F.3d at 264. We hold that the District Court did not abuse its discretion in permitting the jury to view this evidence.
IV.
Bobcat next charges that the Court erred in permitting the Altmans’ attorney to cross-examine its sole corporate witness, Product Safety Manager Thomas Ihringer, using an “unrelated” Washington state case, Gammon v. Clark Equipment Co., 38 Wash.App. 274, 686 P.2d 1102 (1984). To support its argument that Model 709 was safe, Bobcat presented Ihringer’s testimony that Bobcat had never received a report of an accident similar to Altman’s. (App.260, 293.) On cross-examination, the Altmans questioned Ihringer about Gammon, a case in which Clark (Bobcat’s parent) violated discovery rules and repeatedly refused “to turn over ... accident reports.” Gammon, 686 P.2d at 1105. After seven questions on Gammon, Bobcat objected that the Gammon line of questioning was “collateral” because it related to a discovery issue that “has nothing to do with [the Altman] case.” (App.302.) The Court overruled Bobcat’s objection, agreeing with the Altmans that the questioning was “all about credibility.” (App.302.) In subsequent questioning the Alt-mans’ attorney elicited testimony, over Bobcat’s general objection, that Clark had been sanctioned in Gammon for discovery violations. The next day, after the close of evidence, Bobcat moved for a mistrial, alleging for the first time that the Gammon questions violated Rules 403 and 608. In this appeal, Bobcat renews its objections based on relevance and Rules 403 and 608.
We admit doubts about the propriety of the Gammon questions and are not absolutely certain they logically undermined either Ihringer’s credibility or the integrity of Bobcat’s accident reporting system. Even so, we cannot say that the District Court abused its discretion in overruling Bobcat’s relevancy objection to this line of questioning. Relevance is a concept expansively construed, and we do not consider the Gammon questions to be completely irrelevant to the Altmans’ claims.[6] It is another matter entirely that Gammon may have been allegedly relevant only for improper purposes.
We further determine, under a dear-error standard, that the Court did not err *765 in overruling Bobcat’s objection to the “sanctions” question or its belated objections under Rules 408 and 608. See Rule 103(a)(1) (authorizing only dear-error review for general objections unless specific ground apparent from context); United States v. Sandini, 803 F.2d 123, 126-127 (3d Cir.1986) (determining that timely relevancy objection did not preserve for appellate review untimely objections under Rules 403 and 404(b)). In our tradition, the initiative in excluding improper evidence is left entirely to the opponent, who must object to disputed evidence in a specific, timely manner. This requirement is not a trap for the unwary, but is designed to alert the trial court to evidentiary defects so that the court and counsel may immediately remedy those defects. Cf. Estelle v. Williams, 425 U.S. 501, 509 n. 3, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). An objection must, therefore, “suppl[y] the Court with sufficient information ... [to] determine the ground of the objection and ... make an informed and intelligent ruling.” 1 Wigmore, Evidence § 18. Consequently, we examine the Court’s rulings in light of the objections, arguments and evidence proffered by Bobcat at trial.
Under these principles, we cannot say that it was clear error for the Court to overrule Bobcat’s “sanctions” objection or its belated Rule 403 and 608 objections. Our review of the record suggests that the Court reasonably understood Ihringer’s testimony as establishing his own participation and malfeasance in Bobcat’s prior litigation misconduct. (App.284, 285, 286, 300, 301.) Earlier testimony established that during the Gammon litigation, Ihringer was the Clark employee responsible for furnishing accident reports for litigation at the request of Clark’s counsel. (App.283-284.) Ihringer also testified that he attended the Gammon trial and had assisted in pretrial discovery. When asked about Clark’s conduct in the Gammon case, Ihringer frequently responded in terms of what “we” and “I” did. (App.300-302.) Based on the trial Court’s understanding of the testimony, the Gammon questions, including the “sanctions” question, were proper under Rule 608.
Significantly, Bobcat forewent multiple opportunities to correct the Court’s understanding of the testimony, if that understanding was indeed erroneous. In her colloquy with Bobcat’s counsel, Chief Judge Ambrose explained, “I think what [sic] Mr. Hartman said he’s introducing [the Gammon questions] for credibility.” (App.302.) At that point, Bobcat should have immediately asserted its Rule 608 objection and should have sought to clarify Ihringer’s involvement in the Gammon matter. It did not. Re-direct would have presented another opportunity to develop this information, but Bobcat declined the opportunity. Indeed, Bobcat points us to no place in the record where it informed the trial court of the factual basis for its objection to the Gammon cross-examination. In light of Bobcat’s failure to apprise the Court of the basis of its objections, we determine that the Court did not commit clear error when it overruled Bobcat’s objections under Rules 403 and 608.[7] We *766 will not, therefore, disturb the Court’s evi-dentiary rulings with respect to the Gammon questions.
* * * * *
We have considered all contentions presented by the parties and conclude that no further discussion is necessary.
The judgment of the District Court will be AFFIRMED.

. Bobcat Company is an unincorporated business unit of Clark Equipment Company.

. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

. The question posed to Juror 8 was typical: “Do you feel that anything that [Juror 73] said would in any way affect your ability to render a fair verdict in this case?” Juror 8’s response was also typical: “No I don’t.” (App. 375.) Our review of the record reveals that Chief Judge Ambrose posed this question, or a substantively identical question, to each juror. (App.368, 373, 375, 378, 380, 382, 384-385.) Each juror assured the Court that he or she could disregard Juror 73's statements and could render a fair, impartial verdict.

. Two additional circumstances assure us that the Court had objective indicia that the jury would remain impartial. First, the jury had already demonstrated its ability to follow the Court’s instructions by reporting Juror 73’s misconduct almost immediately (App.369). Objectively speaking, the jury’s obedience gave the Court reason to believe the jury would follow instructions to decide the case only on the evidence adduced at trial. Second, the Court was doubtless aware that Juror 73’s statement that the compartment was "tight” was cumulative of other uncontested evidence. Notwithstanding Bobcat's argument to the contrary, no witness testified that the operator’s compartment was anything but "tight.” The uncontested nature of this evidence objectively suggests that Juror 73's *763 statements would not, and could not, prejudice the jury.

. The Court’s Rule 403 analysis was implicit in the trial colloquy. See Forrest v. Beloit Corp., 424 F.3d 344, 355 (3d Cir.2005).

. As Professor Wigmore has explained,
The modern theory of relevancy has been dubbed logical relevancy. This theory contains a number of tenets, one being the claim that evidence having any probative value, however slight, is relevant and therefore admissible in the absence of a specific exclusionary rule or a specific reason, such as undue prejudice, warranting its exclusion. ... This expansive understanding of what it is that makes evidence "relevant” makes it quite difficult to assert with any confidence that any evidence is irrelevant to anything, and close analysis in a modem vein of decisions that purport to exclude evidence for its irrelevancy usually serves to demonstrate that the supposedly irrelevant evidence was in fact excluded (or should have been) for reasons quite apart from irrelevance, such as undue prejudice or undue consumption of time.
1 Wigmore, Evidence § 9.

. In light of the extremely deferential standard for reviewing a trial judge's Rule 403 balancing decisions, we determine that the Court did not commit clear error in rejecting Bobcat's belated Rule 403 objections.
Even were we to decide this evidentiary issue in Bobcat’s favor, we conclude that the alleged errors would be harmless. Error attributable to an evidentiary ruling is "harmless” only if it is "highly probable that the error did not affect the outcome of the case.” Becker v. ARCO Chem. Co., 207 F.3d 176, 180 (3d Cir.2000) (citation and quotation omitted). Bobcat lodged its belated objections only after the Altmans’ attorney had asked, and received answers to, seven Gammon-based questions. This testimony (1) revealed that Clark had failed to produce records in *766 the Gammon proceeding, (2) suggested that Ihringer had been involved in the discovery abuses, and (3) attacked Ihringer's "credibility." (App.300-302.) By then, most of the "damage” of which Bobcat complains, was already done. That the jury heard these matters was not attributable to the District Court's ruling, but to Bobcat's failure to timely object. Chief Judge Ambrose herself highlighted this issue: "I don't know what I would have done if the objection would have been made after the first question. I don't know if I would have thought it went to credibility then or not, but that opportunity went by and I don't know what my ruling would have been." (App.346-347.)
Moreover, in view of the jury’s demonstrated ability to obey jury instructions, Chief Judge Ambrose's curative instructions were more than sufficient to mitigate any unfair prejudice. (App. 350-351 ("[Tjhere's no evidence that Mr. Ihringer and/or the defendant Bobcat withheld any evidence of other accidents involving the machines at issue here. I want to instruct you that the incident that Mr. Hartman questioned Mr. Ihringer about yesterday occurred many years ago, in another state, and in a totally unrelated incident.”).)
Finally, we disagree that any error was harmful to the extent that it impugned Ihringer’s credibility and allegedly unfairly prejudiced Bobcat’s key "design defense.” Our review of the record demonstrates that the evidence adduced in the seven-day trial overwhelmingly supported the Altmans' negligence claim. The Gammon questions comprised a very small portion of this evidence, occupying only five pages of Ihringer's sixty-page trial testimony, which itself occupied a fraction of one day in a seven-day trial. Moreover, prior to the Gammon questions, the Altmans' cross-examination of Ihringer had substantially undercut Bobcat's "design defense” that no previous accidents had occurred by demonstrating that Bobcat’s accident-reporting system did not track "near-misses” (incidents and accidents which did not result in injuries). In view of these circumstances, we determine that the alleged error would be harmless.