JOHAN SWENSON, PLAINTIFF, v. JOHN M. NAIRN, DOING BUSINESS AS SUPERIOR ELECTRIC COMPANY, WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY AND WESTINGHOUSE ELECTRIC SUPPLY COMPANY, DEFENDANTS.

Decided March 26, 1943.

For the plaintiff, *McDermott, Enright & Carpenter.*

For the defendants Westinghouse Electric and Manufacturing Company and Westinghouse Electric Supply Company, *Milton, McNulty & Augelli.*

BROWN, S. C. C. The defendants Westinghouse Companies move, generally, to strike the amended complaint filed in the above entitled cause and specifically as they are respectively named in the seven counts therein, on the grounds: that sufficient facts are not set forth to constitute a cause of action; for uncertainty and statements of irrelevant matter that are designed to "embarrass the issue." The general objection of misjoinder of parties has been abandoned. The motions addressed to the first count is denied as that count is directed against the defendant Nairn only and the cause of action arises out of a contract with him and no motion is made to

strike on behalf of that defendant. It follows as this part of the amended complaint is not stricken the motions made generally to strike should be denied and it is so determined. *Introcasso* v. *Jasper,* 10 *N. J. Mis. R.* 494; 159 *Atl. Rep.* 613; *Malone* v. *B. of L. F. and E.,* 94 *N. J. L.* 347; 110 *Atl. Rep.* 696; *Van Schoick* v. *Van Schoick,* 76 *N. J. L.* 242; 69 *Atl. Rep.* 1080; *McCarter* v. *United New Jersey Railroad Co.,* 76 *N. J. Eq.* 323; 74 *Atl. Rep.* 315; *Eibel* v. *Von Fell,* 63 *N. J. L.* 3; 42 *Atl. Rep.* 754; *Van Horn* v. *Van Horn,* 52 *N. J. L.* 284; 20 *Atl. Rep.* 485. To properly consider the remaining objections made specially to the remaining six counts, reference to the pleadings is necessary. In all the counts of the amended complaint it is alleged that the plaintiff was engaged in the business of building and repairing vessels and in connection therewith owned and operated a dry dock known as No. 2 in Jersey City. In the first count it is stated the defendant Nairn was engaged in the business "of manufacturing, vending, installing and repairing various kinds of electrical machinery and appliances, including electric motors." In October, 1937, the plaintiff entered into a written contract with Nairn "who agreed to install and did install" in place of the steam power then in use in the dry dock "electric and mechanical equipment, including a motor, such equipment and motor to be of suitable size, type and fitness to operate the said dry dock No. 2 in a satisfactory manner" under the terms of the written agreement which is pleaded as part of the amended complaint. It is further charged that Nairn knew, or should have known, if the motor failed during the raising of the dock it would sink to the river bed and be seriously damaged. In the written agreement Nairn is described as a "general agency" for the Westinghouse Electric and Manufacturing Company. He agreed with the plaintiff, owner, on or before November 19th, 1937, to "complete and finish the electrical and mechanical work to be done on and in Dry Docks Nos. 1 and 2" of plaintiff Swenson, according to specifications and estimate stated to be annexed to the agreement and made part thereof. The agreement also provides that the Westinghouse Electric and Manufacturing Company is to furnish the drawings to be

followed as well as furnish all the materials of the kind and quality called for in the specifications. The agreement provides the first payment to be made "on completion of all work involved and on satisfactory operation of dry docks with loads. The remainder was to be paid thirty days after completion and proper and suitable tests with varied load conditions." It was further provided that Nairn was to do all the work and furnish all the materials and to "provide everything necessary for a proper completion of the agreed on work." The agreement further provided that all the covenants therein "apply to and bind the parties hereto and their legal representatives. Installation to cover installing one fifty-horse power and one thirty-horse power motor of Westinghouse Electric and Manufacturing Company; sleeve bearing motors together with all equipment both electric and mechanical and any material or labor not specifically mentioned but necessary to be supplied and installed as though mentioned." The second count alleges the defendant Westinghouse Electric and Manufacturing Company was engaged in the business of manufacturing, vending, reconditioning, repairing and installing various kinds of electrical and mechanical equipment and appliances, including electric motors; that during the months of October and November, 1937, said company "by its servants, agents and employees in furtherance of the work of replacing the steam power then in use in plaintiff's dry dock No. 2 with electrical and mechanical equipment, including a motor of suitable size, type and fitness to warrant and effect the satisfactory operation of the said dry dock, performed and supervised the work preliminary to the installation of the electric motor * * * and the mechanical and electrical equipment in connection thereto, including tests, estimates and appraisals and thereafter continued to perform and supervise the work of the installation of the said motor and electrical and mechanical equipment, including the testing thereof during and subsequent to said installation, when it knew or should have known that if said motor failed during the raising of the dry dock, the said dry dock would sink to the river bed and would be seriously damaged." There is thereafter charged a duty owed

by the defendant to the plaintiff to exercise reasonable care and skill. A breach is alleged that "the defendant failed to use reasonable care and skill but on the contrary was negligent and careless in that it did not make proper inspections and tests of the dry dock, its equipment and appurtenances, and did not make proper inspections and tests of the electric motor and electrical and mechanical equipment prior to, during and subsequent to the installation of the motor and equipment in order to determine the fitness thereof and failed to take reasonable precautions while conducting and supervising test runs of said motor and the equipment above mentioned in that it operated said motor while it was patently overheated and overloaded and that the known intention for a satisfactory and efficient operation of the dry dock was not achieved by reason of the carelessness and negligence of the defendant." Count three contains substantially the same facts and statement of duty against the defendant Westinghouse Electric Supply Company. Counts four and five contain substantially the same allegations as the previous counts and joins all the defendants as being responsible. Counts six and seven respectively allege that the manufacturing company and the supply company, manufactured, reconditioned and sold and delivered the motors in question for installation in the dry dock "knowing that said motor was to be used to raise the dry dock and knowing that subsequent to its delivery of the said motor no tests thereof would be made prior to or other than the test-raisings of the dry dock and that the respective defendants knew or should have known that if the said motor failed the dry dock would sink; that it was the duty of said defendants to manufacture, recondition, repair, sell, deliver and test said motors with reasonable care; that the defendants were careless and negligent in each respect mentioned and that as a result the motor failed and burned out, among other things, as a result of a defective bearing." The defendants contend that the separate counts do not allege a cause of action against the moving defendants named therein, because no relationship is shown between those defendants and the plaintiff by reason of which there was due no legal duty to use "due care." In support of this contention

the defendants cite *Kahl* v. *Love* (1874), 37 *N. J. L.* 5; *Kingsley* v. *Delaware, Lackawanna and Western Railroad,* 81 *Id.* 536; 80 *Atl. Rep.* 327; *Morril* v. *Morril,* 104 *N. J. L.* 537; 142 *Atl. Rep.* 337, and other cases which are not decisive of the questions presented under the pleadings. It may be true that privity of contract does not exist between the plaintiff and the moving defendants and hence the negligence charged may not arise out of such a relationship; nevertheless, there are many ways in which a relationship requiring due care comes into being without privity of contract. Besides relationship created by contract, both expressed and implied, out of which liability for a tort might arise, there is the fundamental legal right that every person owes to every one else the duty to exercise ordinary care not to injure them either in their property or person. The rule of reasonable care necessarily includes two persons or one person and some right or property in another. It has to do with a person's act in reference to the person, property or rights of another, thus being a rule of relationship. Danger of damage or injury reasonably to be foreseen at the time of acting is an established test of negligence. *Evers* v. *Davis,* 86 *N. J. L.* 196; 90 *Atl. Rep.* 677. As a general rule any person who by his negligent personal conduct produces an injury to another is liable therefor. 29 *Cyc.* 475. It is true as a general rule, where the duty violated by the defendant was created solely by contract, that a cause of action arising out of such a violation is limited strictly to the parties in the contract and those in privity with them. No privity of contract is necessary, however, to sustain an action in tort by an individual specially injured by an act or omission constituting a breach of contract where it also constituted an invasion of the legal right of, or the violation of a legal duty owed to, the plaintiff, independently of or concurrently with the contract. *Glanzer* v. *Shepard,* 233 *N. Y.* 236; *App. Div.* 186 *N. Y. Sup.* 98. The separate counts which are specifically attacked on this motion, and in which the moving defendants are named, contain statements of facts, both general and specific, whereby the defendants are charged with damaging the property of the plaintiff through the negligence

of those defendants and in violation of a duty which they owed in law not to so cause injury or damage to another. Whether the defendants were on or about the property of the plaintiff at the time through privity of contract; as licensees; gratuitous performers or trespassers does not affect the stated rule of liability. The moving defendants also contend that the counts affecting them do not state facts sufficient to show that the negligence charged was the proximate cause of the damage sustained. The court finds that there are sufficient facts stated in the complaint of a failure to perform the duty imposed by law and that the failure thereof was the proximate cause of the damages sustained. As to the ground that all the counts from two to seven, inclusive, do not state a cause of action and are uncertain so as to embarrass a trial of the issues, it is found and determined that while the allegations of negligence and liability are quite general in character there is in every count some specific act of negligence charged and in each count a cause of action stated. The motion to strike each and every count in the complaint is denied.