[No. 2158–2.   Division Two.   October 13, 1977.]

ORVILLE W. HUNTER, ET AL, *Appellants,* v. KNIGHT, VALE & GREGORY, *Respondent.*

*Stephen P. Ryder, Dale Kingman,* and *Thom, Mussehl, Navoni, Hoff, Pierson & Ryder,* for appellants.

*Thomas S. Zilly* and *Lane, Powell, Moss & Miller,* for respondent.

PETRIE, J.—The plaintiffs, Mr. and Mrs. Orville W. Hunter, appeal from a summary judgment dismissing one of the several defendants named in their complaint—the accounting firm of Knight, Vale and Gregory. The trial court determined that as to this defendant, plaintiffs' claims of malpractice and breach of fiduciary duty were barred by the 3–year statute of limitations. We affirm the judgment.

The facts, as alleged in plaintiffs' complaint which was filed on March 19, 1975, may be summarized as follows:

Orville W. Hunter was the president and principal stockholder of W. H. Opie and Company until March 20, 1972. During the period of Mr. Hunter's ownership and control, Opie entered into contractual relationships with several banking institutions in furtherance of its business of mortgage financing and construction loan origination. These institutions and several of their key officers are also defendants in the basic lawsuit.

In 1968, Mr. Hunter agreed to a merger between Opie and defendant Equitable Mortgage Company. Plaintiffs allege that the merger agreement was based on numerous

material misrepresentations concerning the financial condition of Equitable. The defendant officers of Equitable, in their new capacity as officers of Opie, are said to have engaged in improper dealings with defendant banks to the detriment of Opie, to wit: "out–of–trust borrowing, double–borrowing, self–dealing with corporate property and corporate waste of the assets of both corporations."

Mr. Hunter claims he advised the banking institutions in 1969 that he believed there were discrepancies in Opie's bank lines of credit and requested the banks to examine their loan policies with respect to Opie's credit and mortgage financing. The defendant banks allegedly ignored Mr. Hunter's request until 1971 and 1972 when they made claims against him and Opie for shortages in bank lines of credit, deficiencies in out–of–trust funds, and double–borrowing on various residential loans. As a result, plaintiffs allege:

> The bank consortium thereafter coerced and by fraudulent concealment of their own banking activities and by concealment of their failure to follow prudent banking practices, conspired along with [other named defendants] to divest Hunter of his stock interest in W. H. Opie and Company and coerced and compelled Hunter to divest W. H. Opie and Company of its mortgage servicing business and all other assets . . . [and] compelled and induced Hunter by economic duress to convey his stock interest in the Opie Company to [other named defendants].

With this background, we turn to plaintiffs' claim against the accounting firm of Knight, Vale and Gregory. During the period of alleged corporate waste and mismanagement, *i.e.*, 1968 to 1972, Knight, Vale and Gregory conducted all of Opie's financial audits. Plaintiffs claim that had the defendant accounting firm exercised due care and employed generally accepted accounting principles, all damage to the corporation and to plaintiffs individually, including loss of Mr. Hunter's stockholdings, would have been avoided.

The trial court, however, never reached the merits of plaintiffs' claim because it granted Knight, Vale and

Gregory's motion for summary judgment, concluding that plaintiffs' cause of action was barred by the running of the 3–year statute of limitations, RCW 4.16.080(2).

A statutory period of limitations commences to run when a cause of action "accrues." RCW 4.16.010.[1] A negligence action generally accrues when all the elements necessary to maintenance of a lawsuit are present. Thus the time of occurrence of the last of these elements is made the critical point of initial inquiry. Frequently, the statute of limitations does not begin to run against a negligence action until some damage has occurred. *See Theurer v. Condon,* 34 Wn.2d 448, 209 P.2d 311 (1949).

■ There are certain circumstances in which the commencement of the statutory period is delayed, despite the existence of a theoretical right to recovery, until the occurrence of some later event the absence of which makes suit impossible or improbable. Such is the case in the developing law of professional malpractice. In *Peters v. Simmons,* 87 Wn.2d 400, 552 P.2d 1053 (1976) and in *Gazija v. Nicholas Jerns Co.,* 86 Wn.2d 215, 543 P.2d 338 (1975) the court applied the so–called "discovery rule" respectively to attorneys and insurance agents. In *Peters* at pages 404–05 the court stated:

> The discovery rule, *i.e.,* when a client discovers or in the exercise of reasonable diligence should have discovered an injury, has been extended in Washington and applied to a variety of actions for professional malpractice. The rule has been extended to physicians, and surveyors.

(Footnotes omitted.) Judicial policy dictates that the discovery rule be extended to accountants in order to protect clients who frequently do not have the means or ability to

---

[1]RCW 4.16.010 provides:

"Actions can only be commenced within the periods herein prescribed *after the cause of action shall have accrued,* except when in special cases a different limitation is prescribed by statute; but the objection that the action was not commenced within the time limited can only be taken by answer or demurrer." (Italics ours.)

discover the perpetration upon them of professional malpractice. *See Moonie v. Lynch,* 256 Cal. App. 2d 361, 64 Cal. Rptr. 55 (1967). We do extend the discovery rule to the profession of accounting.

Application of this rule to the case at bench would seem to dictate the plaintiffs' action against Knight, Vale and Gregory accrued on or before February 24, 1972—the date on which Mr. Hunter directed a letter to defendant accounting firm in which he complained of insufficiencies and inaccuracies alleged to have been made in the certified financial statements which the defendant firm had prepared. Clearly, Mr. Hunter knew of or, in the exercise of reasonable diligence, should have discovered injury to himself or to the corporation by February 24, 1972. Plaintiffs commenced their lawsuit on March 19, 1975, more than 3 years after discovery of the wrong. Thus, it would appear that plaintiffs' claim for damages against Knight, Vale and Gregory was properly dismissed.

Unfortunately the issue on appeal is not so simply resolved. Plaintiffs, for all practical purposes, admit that a cause of action for professional malpractice and breach of fiduciary duty did accrue on the day of Mr. Hunter's discovery of injury. However, plaintiffs argue it accrued only in favor of the corporate entity, Opie, and not to plaintiffs in their *individual* capacities. They claim that all the requisite elements for maintenance of a negligence suit by them individually did not occur until Mr. Hunter suffered damages in his own right, *i.e.,* divestment of his stockholdings on March 20, 1972, and his consequent loss of control over management of the corporation, *less* than 3 years prior to commencement of suit.

Although ingenious, plaintiffs' argument manifests a basic misconception of the nature of *direct* actions by stockholders. As a general rule, a stockholder cannot sue as an individual, as distinguished from a representative of the corporation, where the basis of the cause of action is a contract between the corporation and a third person, even though he personally negotiated and executed the contract

on behalf of the corporation. 13 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5927 (perm. ed. rev. 1970).

This was the holding in *Ninneman v. Fox,* 43 Wash. 43, 86 P. 213 (1906), a case relied on heavily by defendant Knight, Vale and Gregory. The plaintiff in *Ninneman* was a former manager and stockholder of a corporation who had been forced to resign his position as manager and to transfer his stock to others. He brought suit against a third person, a corporation which had allegedly breached its contract with the plaintiff's corporation. The court denied Mr. Ninneman recovery for loss of employment and injury to his reputation, for the reason that those losses were "too remote." Although the result in *Ninneman* may have been proper, the reasoning of the opinion is presently suspect. The court relied substantially on the ancient and universally discredited case of *Winterbottom v. Wright,* 152 Eng. Rep. 402 (1842), which held that there is no liability of a contracting party to one with whom he is not in "privity."

Today it is generally recognized that a duty to exercise due care toward third persons in the performance of a contractual undertaking may arise independent of the contractual obligation. W. Prosser, *Handbook of the Law of Torts* § 93, at 622 (4th ed. 1971). Quoting with approval from *Swenson v. Nairn,* 21 N.J. Misc. 70, 30 A.2d 897 (1943), this jurisdiction has held:

> *No privity of contract is necessary, however, to sustain an action in tort by an individual specially injured by an act or omission constituting a breach of contract where it also constituted an invasion of the legal right of, or the violation of a legal duty owed to, the plaintiff, independently of or concurrently with the contract."*

*Freeman v. Navarre,* 47 Wn.2d 760, 771, 289 P.2d 1015 (1955).

Whether Knight, Vale and Gregory owed plaintiffs a duty independently of, or concurrently with, its contract with Opie is a question of foreseeability. *See Rikstad v. Holmberg,* 76 Wn.2d 265, 456 P.2d 355 (1969). It is not

entirely unreasonable to say that an accounting firm which negligently performs financial audits for a corporation could foresee injury to that corporation's managing stockholders in addition to injury to the corporation.

For purposes of this opinion, however, we need not resolve that issue. Assuming (but certainly not deciding) that Knight, Vale and Gregory owed plaintiffs a special duty in addition to the duty owed to the corporation, that additional or special duty attached only by reason of plaintiffs' status as stockholders and not from circumstances independent of their status as stockholders. As an exception to the general rule, a stockholder may maintain an action in his own right against a third party (although the corporation may likewise have a cause of action for the same wrong) when the injury to the individual resulted from the violation of some special duty owed to the stockholder but only when that special duty had its origin in circumstances *independent* of the stockholder's status as a stockholder. *See Shaw v. Empire Sav. & Loan Ass'n,* 186 Cal. App. 2d 401, 9 Cal. Rptr. 204 (1960). 13 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5921 (perm. ed. rev. 1970). That independent origin is nonexistent in the case at bench.

Accordingly, we conclude that summary judgment of dismissal as to defendant Knight, Vale and Gregory was properly entered because (1) to the extent that the action is derivative in nature, the statute of limitations has run, and (2) to the extent that it is a direct, individual claim, no action lies. We are constrained to note at this point, however, that our conclusion as to dismissal of defendant accounting firm does not necessarily apply to the allegations made against other defendants. Those matters must be decided if, as, and when, they are presented to us.

Judgment affirmed.

REED, J., and HENRY, J. Pro Tem., concur.

Petition for rehearing denied November 10, 1977.

Review denied by Supreme Court April 7, 1978.