FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAR -3 AM 10: 44



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SHUMET MEKONEN, WONDWOSSEN )
MERSHA; TIGABU LAKEW; TEKEBA )
TIGABIE; HABTAMU ABOYE; YIRGA )
BELETE; SELAMNEH AMBAW; and )          NO. 69278-0-I
                                 )
      Appellants/Cross Respondents, )          DIVISION ONE
                                   )
GREEN CAB TAXI AND DISABLED )
SERVICE ASSOCIATION, LLC, a )
Washington limited liability company, )
                                   )
              Plaintiffs, )
      v. )
                                   )
DESSIE ZEWDU, JANE DOE ZEWDU, )
husband and wife, and the marital )
community comprised thereof; WORKU )
ASMARE, JANE DOE ASMARE, )
husband and wife, and the marital )
community comprised thereof; WORKU )
MELESE; BAZEZEW BIRHAN; )
MOTBAYNER TEBEJE; ENDALE )
ANDENO; MELAKU KEBEDE; NEGA )
WONDIMAGEGN; KASSA DERAR; )
ALBA ANDREA MIRELES-FLORES, )          UNPUBLISHED OPINION
JOHN DOE MIRELES-FLORES, )
husband and wife, and the marital )          FILED: March 3, 2014
community comprised thereof; and )
                                   )
      Respondents/Cross Appellants. )
_____ )

LAU, J. — This case involves a dispute between two member groups over control of Green Cab Taxi and Disabled Service Association LLC (Green Cab), a taxicab transportation company. Plaintiffs appeal aspects of the trial court's injunctive relief order, including the court's buyout remedy and valuation of their membership interests.[1] Defendants cross appeal the jury's award of damages to individual plaintiffs on their breach of contract and tortious interference claims. We affirm the trial court's injunctive relief determination as well within the court's discretion. We reverse the breach of contract and tortious interference verdicts and judgments in favor of plaintiffs because plaintiffs lacked standing to sue on the King County contract and the court's erroneous breach of contract instruction adversely affected the jury's tortious interference verdict. We remand for a new trial on liability and damages and without prejudice to the parties to conduct further discovery.

## FACTS

Green Cab is a taxi service formed in 2007 in response to a contract awarded under a King County Request for Proposal (RFP) entitled "Alternative Way to Structure a Taxicab Association—Test." Ex. 2. The RFP envisioned a taxicab association in which the drivers would be employees governed by collective bargaining and workers' compensation insurance, all vehicles would be hybrid electric vehicles covered by one liability insurance policy, and 10 percent of vehicles would be wheelchair accessible. King County planned to issue 50 taxicab licenses to the successful bidder. The licenses remained the property of King County and were nontransferable except under special

---

[1] Plaintiffs do not appeal the tortious interference damages award in favor of defendants.

circumstances authorized by the county.[2] Each of Green Cab's founding members,[3] including Shumet Mekonen, contributed $75,000 in capital to start the company. In exchange, each founding member received two "units" in the company, meaning each would get two taxi licenses.

The contract was awarded in the name of Green Cab Taxi and Disabled Services Association by letter dated September 21, 2007, addressed to its president, Tigabie Tekeba.[4] Green Cab is governed by the June 2008 operating agreement. Under the operating agreement, Green Cab's board of directors was responsible for, among other things, "ensuring compliance with King County and other governmental rules, regulations and requirements applicable to the Company or its business." Ex. 1 at 6.

A lawsuit filed against King County by competing taxicab companies delayed issuance of the 50 licenses Green Cab expected to receive. The delay also prevented Green Cab from doing business until August 2008. Green Cab suffered great financial strain and hardship during this time. To help keep Green Cab afloat, in 2008 the board of directors instituted a requirement that members pay weekly dues.

After the competitors' lawsuit settled in 2008, King County awarded the RFP contract to Green Cab by letter to Green Cab's board chairman, Worku Asmare. However, the county issued Green Cab only 20 licenses. The county issued Green Cab additional licenses in 2009 or 2010, but never 50 licenses as was originally planned.

---

[2] The licenses were only for King County pick up, not the more lucrative city of Seattle or Sea-Tac airport pick up.

[3] Testimony and exhibits established there were originally 23 founding members, later possibly expanded to 25.

[4] Tekeba, deceased at the time of trial, was plaintiff Shumet Mekonen's brother.

King County retained ownership and had the power to revoke the licenses if Green Cab violated any provisions of its agreement with the county. Because of the financial strain resulting from the delays, Green Cab operated its business on a traditional taxicab model where drivers owned the vehicles and retained the fares earned rather than the business model envisioned under the King County RFP contract. By 2009, lingering financial problems caused many Green Cab drivers to default on their car payments and/or their dues owed to Green Cab. In 2009, Green Cab's membership unanimously approved a policy prohibiting a member from serving on the board of directors if dues remained unpaid.

In 2010, Shumet Mekonen, an original LLC member and a plaintiff in this case, grew dissatisfied with Green Cab's management for various reasons, including perceived violations of the RFP. At that time, defendant Dessie Zewdu was board chairman and several other defendants were board members. Mekonen felt that Zewdu and others were running the company improperly. Mekonen called for an election held September 4, 2010, to elect a new board of directors. Mekonen was elected to the board and named chairman, and several others elected to the board on September 4 were not current in their dues owed to Green Cab.[5]

---

[5] The candidates receiving the most votes at the September 4 election were Worku Melese, Bazezew Birhan, Wondwossen Mersha, Tebeje Motbayner, Shumet Mekonen, Endalkachew Lakew, Yirga Belete, and Yonathan Worku. Mersha, Lakew, Belete, and Worku were not current in the payment of weekly fees on the date of this election. According to unchallenged findings in special verdict form A, only members current in the payment of capital contributions, including weekly fees and insurance premiums, were eligible to vote in a board election. However, this requirement was waived by the members, and members who were not current in their weekly fee payments voted for directors. Only members who were current in the payment of capital contributions were eligible to serve as members of the board of directors. This

-4-

On September 13, a majority of members petitioned to dissolve the board elected on September 4 and to conduct a new election because "defaulting" members (those who owed weekly fees to Green Cab) were inappropriately elected to the board. Three of the seven board members—Motbayner, Birhan, and Melese—resigned in protest on September 20.

A members' meeting was called to conduct a new board election on September 25. At this meeting, the board members elected were defendants Worku Melese (chairman), Nega Wondimagegn, Bazezew Birhan, Montbankdore Tebede, Melaku Kebede, Endale Andeno, and Kassa Derar. Plaintiffs Mekonen group[6] refused to participate in the September 25 election and disputed the results.

In October 2010, members of the two sides each initiated litigation seeking damages and asking the court to determine who had the right to manage Green Cab. Plaintiffs filed a complaint, amended complaint, and an answer with counterclaims in the two suits. Defendants filed a complaint and an answer and counterclaims. The two cases were consolidated for trial.

Plaintiffs advanced five claims to verdict, including breach of fiduciary duty, tortious interference, breach of contract, unjust enrichment, and permanent injunction. Defendants advanced six claims, including breach of contract, breach of fiduciary duty, tortious interference, unjust enrichment, conversion, and injunctive relief. Through the

---

requirement was not waived by the membership, and ineligible members were elected to the board at the September 4 election.

[6] As discussed below, each side sued the other in separate lawsuits, meaning each was both a plaintiff and a defendant. The cases were consolidated for trial, but the court and parties continued to call Mekonen's group "plaintiffs" and Zewdu's group "defendants" for clarity. We adopt those references here.

date of trial, Green Cab existed under two separate management groups, each competing for the right to call itself Green Cab Taxi and Disabled Service Association LLC and to claim the rights under the taxi licenses and King County RFP award. The record demonstrates conflicts between the two groups indicating they are unable or unwilling to work together.

Plaintiffs failed to answer requests for admission served on them in discovery, resulting in the deemed admission of two key defaults under the operating agreement. The trial court instructed the jury on these admissions:

> 3. Under article 8.1(b)(i), (b)(ii), and [(c)(5)] of the Green Cab operating agreement and the laws relating to limited liability companies all the plaintiffs and defendants must pay capital contributions in a timely manner including but not limited to weekly fees and insurance premiums. A failure to make these contributions constitutes a default and any defaulting party is subject to the relevant defaulting provisions of the operating agreement.
> 4. Each plaintiff has not paid their capital contributions in a timely manner including but not limited to weekly fees and insurance premiums.
> 5. Under article 5.6 of the Green Cab operating agreement no member may disassociate or withdraw from the LLC because a dissociation or withdrawal would violate the terms of the taxi license program.
> 6. Each plaintiff has disassociated or withdrawn from the Green Cab LLC.

RP (July 31, 2012) at 109-10. Plaintiffs did not object to these instructions other than to ask for a minor change in wording, which the court granted prior to reading the above instructions.

The jury found in plaintiffs Mekonen, Mersha, Aboye, and Belete's favor on the breach of contract, tortious interference, and breach of fiduciary duty claims. The jury awarded damages as follows: (1) to Mekonen, $95,000 on the breach of contract claim and $38,000 on the tortious interference claim; (2) to Mersha, $8,500 on the tortious interference claim and $14,000 on the breach of fiduciary duty claim; and (3) to Belete,

$26,600 on the tortious interference claim. The jury also found in defendants' favor on their tortious interference claim, awarding them $18,600 in damages.[7]

Based on the jury's answers on special verdict form A discussed below, the court issued a memorandum decision on August 24, 2012. The court found in defendants' favor regarding the board election's validity and the right of management and control over Green Cab. It found plaintiffs had no right to represent themselves as part of Green Cab's management or to operate under Green Cab's name. Regarding plaintiffs' taxicab licenses, the court explained:

> According to Paragraph 6.4 of the LLC Operating Agreement, "[t]he Company shall hold all rights to any taxi and other licenses and permits necessary to operate its vehicles." The Plaintiffs have no right to use the taxi cab licenses unless they are members of Green Cab LLC in good standing and are making any contributions toward the company's operating expenses that the board of directors deems necessary. Plaintiffs admit that they withdrew their membership from Green Cab LLC and that they have paid no weekly fees since January 2011. As a result, the Plaintiffs have no legal right to retain the King County taxi cab licenses currently in their possession. Plaintiffs are hereby ordered to return to Green Cab LLC any King County taxi cab licenses in their possession within 5 days of this decision.

The court found that under article 8.1(c)(v) of the operating agreement, Green Cab must pay the plaintiffs the net book value of their percentage interest in the company, as calculated by the company accountant at $5,078.57 per unit.[8]

The court entered a permanent injunction against plaintiffs enjoining them from representing themselves as part of Green Cab's management or operating under Green

---

[7] The jury rejected defendants' breach of fiduciary duty and conversion claims and rejected both parties' unjust enrichment claims. As noted above, plaintiffs do not appeal the tortious interference damages award in defendants' favor.

[8] As discussed below, Green Cab's accountant Tesfaye Temesgen testified in his declaration that the current net book value of a defaulting member's percentage interest in Green Cab was $5,078.57.

Cab's name. The injunction also required plaintiffs to return their taxi licenses to Green Cab.

Both parties moved unsuccessfully for reconsideration. Both parties appeal.

## ANALYSIS

### Plaintiffs' Appeal: Injunctive Relief

Plaintiffs do not contest any of the jury verdicts, judgments, or the trial court's determination that defendants are entitled to manage and operate Green Cab. Plaintiffs' appeal pertains to the court's injunctive relief.

### Relevant Facts

Both parties requested injunctive relief in their complaints. The defendants' complaint specifically asked for an injunction enjoining plaintiffs from conducting business on behalf of Green Cab or taking any of Green Cab's property from its offices or premises other than a taxi vehicle. The parties agreed the jury would decide by special interrogatories the facts related to injunctive relief and leave for the court to decide the proper injunctive relief. In response to the court's question whether any claims would be "tried to the Court as opposed to the jury," plaintiffs' counsel stated, "I would just say the equitable claim of the permanent injunction." RP (July 18, 2012) at 20-21. Control over Green Cab depended on the validity of the September 4 election. The parties and the court drafted a set of special interrogatories to submit to the jury to answer disputed factual questions about the election. Neither party objected to the final verdict forms submitted to the jury. The jury returned the following special verdict form A in relevant part:

1. In September 2010, was there a requirement that only members current in the payment of capital contributions, including weekly fees and insurance premiums, could vote in a board election? YES
2. If the answer to Question No. 1 is "YES," were any of [the] members who voted in the September 4, 2010 election not current in the payment of capital contributions, including weekly fees and insurance premiums? YES
3. Did the Members of Green Cab LLC agree to waive the requirement that voting Members be current on the payment of capital contributions, including weekly fees and insurance premiums, in order to vote in the September 4, 2010 election? YES
4. In September 2010, was there a requirement that only members current in the payment of capital contributions, including weekly fees and insurance premiums, could serve as a member of the board of directors? YES
5. If your answer to Question No. 4 was "Yes," in the September 4, 2010 election, were members not current in the payment of capital contributions, including weekly fees and insurance premiums, elected to the board of directors? YES
6. For the September 4, 2010 election, did the Members of Green Cab LLC agree to waive the requirement that Members be current on the payment of capital contributions, including weekly fees and insurance premiums, in order to serve on the board of directors? NO

(Formatting omitted.) The court concluded, based on the special verdicts and its own independent review of the evidence, that the September 4 election was invalid and the September 25 election was valid. Accordingly, defendants prevailed on the key issue of control over Green Cab. Plaintiffs do not dispute that ruling on appeal.

After trial and before the court issued its memorandum opinion, defendants submitted a "brief in support of equitable relief" requesting the court to find that plaintiffs "automatically forfeited all rights associated with their Membership interests, and have offered for sale their Membership units Per § 8.1(c)(v)(ii) of the Operating Agreement." Defendants also requested the court to order plaintiffs to cease operations as Green Cab and return their King County license plates to Green Cab. Defendants submitted the declaration of Green Cab accountant Tesfaye Temesgen, who stated, among other things, that the current net book value of a defaulting member's percentage interest in

Green Cab was $5,078.57. This declaration was never offered or admitted into evidence at trial, and Temesgen was not identified as a witness on the defendants' witness list.

Plaintiffs submitted a brief on injunctive relief. They argued that defendants failed to meet the legal requirements for a permanent injunction. Plaintiffs requested the court to order the parties to operate Green Cab "as one Company within which two groups of drivers, Group A and Group B drive the taxi cabs." Plaintiffs also filed a response and objections to defendants' request for injunctive relief. While they did not specifically dispute Temesgen's valuation of the current net book value of a defaulting member's percentage interest in Green Cab, plaintiffs moved to strike Temesgen's declaration on hearsay and relevancy grounds, arguing, "This witness never testified at the trial and the jury already found the facts in the case." Plaintiffs also claimed special verdict form A did not support defendants' request for a permanent injunction.

The court entered a permanent injunction enjoining plaintiffs from representing themselves as part of Green Cab. As part of its injunction, the court ordered plaintiffs to return their King County taxicab licenses to Green Cab. The court also required Green Cab to "pay to each person within the Plaintiffs Group the current net book value of their membership interests, set out above, sum within 30 days of this decision."

Plaintiffs moved for reconsideration, arguing that "the taxi license value is anywhere from $37,500.00 to $300,000.00" and "[t]he amount now being entered in the final judgment, $5,087.00, is simply not an accurate estimate of the true value of a taxi license." Plaintiffs submitted Mekonen's declaration that claimed a license was worth $37,500 when Green Cab was formed ($75,000 initial capital contribution divided into

two units) and claimed the licenses had increased in value since that time. However, Mekonen phrased his objection in terms of market value and provided no competing book value valuation.

In denying plaintiffs' motion for reconsideration, the court explained:

No party has suggested that any dispute regarding the valuation of a membership interest should be decided by the jury and this Court understood that all parties to this lawsuit submitted the issue of the valuation of the membership to the Court for resolution based on the evidence presented prior to the August 24, 2012 hearing.
The Court considered the terms of the Operating Agreement, which calls for the net book membership valuation to be determined by the company accountant and the accountant's declaration as to this valuation. But the Court also considered other evidence, including the business interruption that this lawsuit and the activities of all the parties have caused to the company (which impacts its overall value) and the evidence submitted by Plaintiffs at trial as to the amount of money invested into the company and the amount of revenue they generated as cab drivers. Although the taxi cab licenses may have a market value greater than the net book value of a membership interest in the company, it is the membership interest that is at issue and not the fair market value of a King County taxi cab license. Based on the Court's evaluation of all the evidence, the Court concludes that the valuation provided by the Defendants is the most reasonable based on a review of all the evidence presented during and after trial.

(Emphasis added.)

### Analysis

### Buyout Remedy and License Surrender

The trial court has discretion to provide injunctive relief if a party demonstrates that (1) it has a clear legal or equitable right, (2) it has a well grounded fear of immediate invasion of that right, and (3) the acts it complains of are either resulting in or will result in actual and substantial injury. Kucera v. Dep't of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000). We review a trial court's decision to grant an injunction and

the terms contained in the injunction for abuse of discretion.[9] Kucera, 140 Wn.2d at 209. The trial court has broad discretionary power to fashion injunctive relief to fit the particular facts, circumstances, and equities of the case before it. Brown v. Voss, 105 Wn.2d 366, 372, 715 P.2d 514 (1986); Rupert v. Gunter, 31 Wn. App. 27, 30, 640 P.2d 36 (1982). "Appellate courts give great weight to the trial court's exercise of that discretion." Brown, 105 Wn.2d at 372. A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds or reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Plaintiffs first contend the trial court erred "in deciding issues other than those pleaded and submitted to the court for determination." Appellants' Br. at 2. Plaintiffs present no argument regarding failure to plead the buyout remedy, mentioning it only in their statement of the case. See Appellants' Br. at 7-8. An issue not briefed is deemed waived. Kadoranian by Peach v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992). Regardless, defendants requested injunctive relief in their complaint as noted above. "Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought." Pacific Nw. Shooting Park Ass'n. v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006); CR 8(a). Plaintiffs cite no authority requiring claimants to plead every form of injunctive relief possible under the circumstances. Further, in their brief supporting equitable relief, defendants specifically

---

[9] Citing several distinguishable cases, plaintiffs contend that because "[t]he trial court did not act as a finder of fact on any of the claims, including the requested injunctive relief" and "simply ruled based on the jury's findings and the undisputed facts," we should "review the trial court's decision to force the sale of [their] membership interests de novo." Appellants' Br. at 10; Appellants' Reply Br. at 6. Plaintiffs' cited authorities do not control. Under well-settled law discussed above, the standard is abuse of discretion.

-12-

requested the court to find that plaintiffs had offered their interests for sale under the operating agreement. The issue was properly before the trial court.

The operating agreement specifies the remedies for default in payment of monetary obligations under article 8.1(c), and for "other defaults" under article 5.8(b). Ex. 1 at 5, 12-13. Article 5.8(b)'s provisions merge into article 8.1(c) because article 5.8(b)(iii) permits, as a remedy for "other defaults," that "the Company may . . . Remove the defaulting Member upon a purchase of his or her Membership Interest pursuant to Section 8.1(c)(v)." Ex. 1 at 5. Article 8.1(c)(v) provides the following remedy against a defaulting member:

> If a Defaulting Member fails to make a Capital Contribution for more than 30 days from the due date, then cause the Defaulting Member to: . . . (ii) be deemed to have offered for sale to the Company all of the Units and any other associated rights then held by the Defaulting Member for a purchase price determined by the Company's accountant to be the net book value of the Defaulting Member's Percentage Interest in the Company represented by the Units. . . .

Ex. 1 at 13. The trial court ordered the remedy provided for in this provision governing a defaulting member.[10]

---

[10] Plaintiffs contend, "None of the remedies in the Operating Agreement implement themselves; they all require written notice from the Chairman, then pursuit of one or more of the 6 remedies as determined by the Board." Appellants' Br. at 13. Plaintiffs contend that no written notice of default ever occurred and claim "the court was not tasked with making [the decision to designate plaintiffs as defaulting members] for Green Cab." Appellants' Br. at 13. Plaintiffs failed to raise their notice argument below. An appellate court "may refuse to review any claim of error which was not raised in the trial court. . . ." RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005). Further, plaintiffs cite no authority limiting the trial court's broad discretion to the exact remedies set forth in the parties' contractual agreement. Their argument fails.

Throughout their briefing and below, plaintiffs confuse the surrender of their taxi licenses with the buyout of their membership interests. The operating agreement addresses taxi licenses as distinguished from membership interests. Article 6.4 of the operating agreement provides, "The Company [Green Cab] shall hold all rights to any taxi and other licenses and permits necessary to operate its vehicles. . . ." The court referenced that article when it required plaintiffs to return the licenses:

Plaintiffs repeatedly contend, "By finding the [plaintiffs] to be in breach (or default) under the contract, determining the appropriate remedy, and making a determination of fact about the value of the [plaintiffs'] units to be awarded to plaintiffs, the court was adjudicating a contract claim, not fashioning injunctive relief." Appellants' Reply Br. at 6. Separate from the various breach of contract claims, the undisputed record shows the jury was instructed to decide the facts that the court relied on to determine which competing group had the right to control the company. See CP 764 (defendants' trial brief stating "The core dispute here is which group has the right to control Green Cab"); RP (July 31, 2012) at 70 (court's question to the parties while discussing the special verdict forms: "What findings of fact need to be made in order to determine who has the right to run this company?"). Plaintiffs do not challenge the court's conclusion, based on unchallenged jury findings regarding the validity of various elections, that defendants are entitled to control Green Cab. Given the parties' contentious multiyear history—amply demonstrated in the record—the court acted well within its broad discretion to treat the plaintiffs as defaulting members under the

---

Plaintiffs seek to retain the taxi cab licenses affixed to the cars they own. According to Paragraph 6.4 of the LLC Operating Agreement, "[t]he Company shall hold all rights to any taxi and other licenses and permits necessary to operate its vehicles." The Plaintiffs have no right to use the taxi cab licenses unless they are members of Green Cab LLC in good standing and are making any contributions toward the company's operating expenses that the board of directors deems necessary. Plaintiffs admit that they withdrew their membership from Green Cab LLC and that they have paid no weekly fees since January 2011. As a result, the Plaintiffs have no legal right to retain the King County taxi cab licenses currently in their possession.

Given that the court deemed the members "defaulting members" who had offered their membership interests for sale, it did not abuse its discretion in requiring them to return the licenses—which are actually the property of King County and the use of which is governed by Green Cab's agreement with the county—to Green Cab. See Ex. 67 (King County's award letter to Green Cab describing license issuance and allowing county to revoke licenses for a number of reasons).

operating agreement. Defaulting members under the agreement are deemed to have offered their interests for sale as described above.[11]

Plaintiffs acknowledge that "a member can lose his interest in Green Cab . . . pursuant to the remedies under paragraph 8.1(c) [of the operating agreement], if he is a Defaulting Member." Appellants' Br. at 12. As noted above, the jury was instructed regarding admitted defaults by the plaintiffs. Plaintiffs admitted to default both in failing to make weekly payments and in withdrawing from the company in violation of article 5.6 of the operating agreement. That article states, "A Member may not withdraw as a Member prior to dissolution and commencement of winding up of the Company pursuant to Article 14 without the written consent of all the other Members." Ex. 1 at 3. The trial court imposed relief that was reasonably calculated to install defendants as the proper group to manage Green Cab and to preserve their interests in operating the company according to their agreement with King County. Given the

---

[11] Regarding the operating agreement, plaintiffs claim that the agreement does not support the court's injunctive relief because "[t]he jury found that [plaintiffs] had not breached the Operating Agreement . . . ." Appellants' Br. at 12. Plaintiffs claim that the buyout remedy is thus inconsistent with the jury verdict on breach of contract. However, the jury merely found plaintiffs were not liable for breach of contract under instruction 15. Instruction 15 allowed the jury to reject defendants' breach of contract claim against the plaintiffs in ways that are not necessarily inconsistent with the trial court's grant of injunctive relief. See RP (July 31, 2012) at 116-17 (jury instruction). The court instructed the jury regarding admitted defaults by the plaintiffs. RP (July 31, 2012) at 109-10. Further, special verdict form A contains two specific findings of default: (1) weekly fees were required, but some members who voted on September 4 were not current in payment of weekly fees and (2) members elected to the board on September 4 were not current in the required payments. In addition to the jury findings, the admissions and record evidence indicated that weekly fees were required, that plaintiffs defaulted on their payments, and that plaintiffs further defaulted by withdrawing from Green Cab, moving to a new office, purchasing separate insurance, and ceasing or cutting back on driving the licensed vehicles. These defaults did not necessarily require the jury to find a breach of contract, but they were enough for the trial court, acting in equity, to grant the injunction.

relative interests of the parties and the LLC, the trial court acted well within its discretion to order plaintiffs to return their taxi licenses and sell their membership interests back to Green Cab.

<u>Membership Interest Valuation</u>

As noted above, the parties agreed to reserve the issue of injunctive relief to the trial court for determination after the jury rendered verdicts on damages. The court addressed the injunction issue on August 24 based on the parties' written briefs and the trial record. As the court stated in its order denying plaintiffs' motion for reconsideration:

> No party has suggested that any dispute regarding the valuation of a membership interest should be decided by the jury and this Court understood that all parties to this lawsuit submitted the issue of the valuation of the membership to the Court for resolution based on the evidence presented prior to the August 24, 2012 hearing.

Plaintiffs object to the trial court's reliance on Green Cab accountant Tesfaye Temesgen's declaration in determining the net value of their membership interests. They challenge the declaration on various grounds, including lack of disclosure, hearsay, foundation, and conclusory opinion. They argue, "By making a determination after the close of trial based on material that was never admitted into evidence, on a hearsay, conclusory declaration by an undisclosed witness, the court violated basic rights of due process." Appellants' Br. at 15.

"In cases involving both legal and equitable issues, as this one does, the trial court has a broad discretion in allowing a jury to determine some, none or all of the factual issues presented." <u>Rao v. Auburn Gen. Hosp.</u>, 19 Wn. App. 124, 129, 573 P.2d 834 (1978). Here, the parties agreed to submit the question of the appropriate injunctive relief to the trial court for determination. The court can hardly be faulted for

resolving both the factual and legal issues relevant to the appropriate injunctive relief given the parties' undisputed agreement. Determining the proper relief required the court to determine the value of the plaintiffs' membership interests. Plaintiffs do not dispute that they signed the operating agreement, which provides for sale of a member's membership interest "for a purchase price determined by the Company's accountant to be the net book value of the Defaulting Member's Percentage Interest in the Company represented by the Units." Ex. 1 at 13. The agreement governs who determines membership value—Green Cab's accountant.

The court considered the operating agreement, the accountant's opinion regarding book value, and other evidence, including the substantial evidence of business interruption due to the ongoing management conflict and litigation. The trial record testimony indicates that in March 2011, Yirgalem Gebremichael purchased one unit in Green Cab for $6,000. That taxicab licenses may trade in the open market at a higher value is irrelevant. As the court properly noted in its order denying reconsideration, "[I]t is the membership interest that is at issue and not the fair market value of a King County taxi cab license." The relevant valuation question is the membership interests' unit value. Plaintiffs never questioned the authenticity of the accountant's declaration. Record evidence also showed that the membership interests in question were of diminished value. Green Cab's accountant provided a book value number and plaintiffs failed to rebut that number. The court's valuation is consistent with the trial evidence.

We find no abuse of discretion in the court's membership value determination.

Defendants' Cross Appeal

Lack of Standing

Analysis

Over defendants' repeated standing objections, the trial court permitted individual plaintiffs to assert a breach of contract claim premised on the Green Cab–King County RFP contract and grounded in an alleged oral agreement among Green Cab members to comply with the RFP.[12] Defendants argued that plaintiffs lacked standing to assert a breach of the RFP contract because it was a contract between Green Cab and King County, not between the plaintiffs and defendants. The court nonetheless instructed the jury that it could find that defendants breached a contract if it found that the terms of the contract included obligations (1) to implement an employer-employee relationship with member drivers, (2) to pay a salary or wage for work performed, (3) to comply with workers' compensation, and (4) to provide health insurance benefits. It is the RFP agreement that imposes these duties on Green Cab. Defendants contend the trial court erred by allowing plaintiffs to assert a breach of the RFP contract claim.

Plaintiffs' response consists of one paragraph of unsupported conclusory arguments. They argue: (1) defendants orally promised plaintiffs to comply with the RFP and the Green Cab board is responsible to ensure contract compliance, (2) the King County RFP imposed obligations on Green Cab, (3) unjustified noncompliance

---

[12] The record shows this oral agreement claim first surfaced on July 31, 2012, the same day the parties lodged objections and exceptions to the court's proposed jury instructions and made closing arguments.

with any provision constitutes a breach, (4) plaintiffs asserted no derivative claim,[13] (5) defendants misunderstood plaintiffs' breach of contract claim, and (6) defendants failed to appeal the oral agreement or the related jury instruction.[14]

Plaintiffs fail to cite any authority to support their arguments and make only minimal reference to the record. Assignments of error unsupported by reference to the record or argument will not be considered on appeal. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). Nonetheless, our review shows no authority exists to support plaintiffs' assertions.

It is well settled that "[a] party to a contract is entitled to enforce it and to sue in his own name." Kim v. Moffett, 156 Wn. App. 689, 700, 234 P.3d 279 (2010). Standing is a common law doctrine that prohibits a plaintiff from asserting the legal rights of another. Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). Generally, "a stockholder cannot sue as an individual, as distinguished from a representative of the corporation, where the basis of the cause of action is a contract between the corporation and a third person, even though he personally negotiated and executed the contract on behalf of the corporation." Hunter v. Knight, Vale & Gregory, 18 Wn. App. 640, 644-45, 571 P.2d 212 (1977) (citing

---

[13] Plaintiffs do not contend this was a derivative action.

[14] Defendants' repeated lack of standing objections are obvious in our record. Defendants properly and timely preserved this claim.

13 William Meade Fletcher, <u>Cyclopedia of the Law of Private Corporations</u> § 5927 (perm. ed. rev. 1970)).

Under this well-settled case authority, we conclude plaintiffs lack standing to enforce Green Cab's contract with King County. We conclude the trial court erred by allowing plaintiffs to pursue their breach of contract claim against defendants premised on the Green Cab–King County RFP contract and grounded on an unproven oral agreement.[15] Plaintiffs' alleged oral agreement is unsupported by the record, the law, and logic.

<u>Remedy</u>

As noted above, the court's breach of contract instruction 14 misinformed the jury that an essential element of plaintiffs' claim required proof "[t]hat the defendants entered into a contract or contracts with the plaintiffs." RP (July 31, 2012) at 114. Compounding this error, the court also gave an erroneous "summary of the claims" instruction:

> Breach of contract. Plaintiffs allege that the defendants entered into contracts with them to form Green Cab LLC. One of the contracts is called the operating agreement. Plaintiffs also allege that the defendants orally promised the plaintiffs that they would comply with the terms of the King County RFP and award letter. Plaintiffs contend that the operating agreement and the RFP award letter set forth requirements that Green Cab LLC was to follow. Plaintiffs claim that the defendants breached these contracts and as a result of this breach of contract they personally sustained monetary damages.

---

[15] The oral agreement theory also fails on multiple grounds. It is unclear how the oral agreement among Green Cab members creates an individual or collective right to sue on the Green Cab—King County RFP agreement. Plaintiffs never alleged an oral agreement and presented no evidence at trial to establish an oral agreement. The alleged agreement fails for lack of consideration because the agreement, if it exists, binds plaintiffs to do what they were already obligated to do. "An agreement to do that which one is already obligated to do does not constitute consideration to support a contract." <u>Crown Plaza Corp. v. Synapse Software Sys, Inc.</u>, 87 Wn. App. 495, 501, 962 P.2d 824 (1997).

RP (July 31, 2012) at 106. Because we are unable to determine from the jury instructions, special verdicts, and the trial record the contracts on which the jury relied to reach its breach of contract verdict, we reverse the breach of contract verdict and judgment and remand for new trial on liability and damages and without prejudice to conduct further discovery.

### Plaintiffs' Tortious Interference Claims

Defendants also challenge plaintiffs' tortious interference awards, arguing insufficient evidence to support the damages awarded. We conclude that the court's error in allowing the jury to consider the RPF contract also warrants reversal of plaintiffs' tortious interference awards. See Falk v. Keene Corp., 113 Wn.2d 645, 659, 782 P.2d 974 (1989) ("An appellate court has inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision."); Wills v. Kirkpatrick, 56 Wn. App. 757, 758 n.1, 785 P.2d 834 (1990) (same).

The trial court's erroneous breach of contract instruction discussed above casts doubt on the jury's tortious interference finding and damages awards. This instruction invited the jury to consider tortious interference claims as part of the breach of contract claim. For example, the instruction permitted the jury to find breach of the RFP contract if it determined the defendants excluded plaintiffs from the dispatch system, excluded them from the company offices, or prevented them from picking up fares at the lucrative Bellevue location—the identical theories on which plaintiffs based their tortious interference claims. Indeed, the court questioned plaintiffs' counsel about the improper purpose and improper means element of their tortious interference claim:

> [THE COURT]: What was the evidence of improper purpose and improper means?
>
> [PLAINTIFFS' COUNSEL]: The evidence of improper purpose and improper means was these defendants are - -
>
> [THE COURT]: - - weren't sent dispatches?
>
> [PLAINTIFFS' COUNSEL]: Well, there's a couple. <u>Everything [defendants] seemed to do was improper, starting with the way the company was never really gotten off to what the agreements were between the county and the members</u>, and then how it was in this period of disarray. The operating agreements, the multiple operating agreements; the not operating the operating agreements or following them when you want to follow them; and then saying we can interfere with your business relationships because we're following some un-agreed operating agreement. That's one improper purpose.
>
> The other improper purpose is, essentially after the lawsuit, they would not give dispatches to the other side. There was testimony to that.
>
> The other improper purpose is [plaintiffs] were locked out of the Bellevue-- locked out of the Bellevue lucrative taxi location. There was testimony about that. There was testimony that [plaintiffs] were locked out of their own offices and denied access to the dispatch system. They were denied access to the phone numbers.
>
> And so the improper purpose was to put [plaintiffs] out of business so then [defendants] would just get the business by default.

RP (July 26, 2012) at 54-55 (emphasis added).

The comments of plaintiffs' counsel and the erroneous breach of contract instruction make clear that the jury likely relied on the RFP contract to determine both claims—breach of contract and tortious interference. Given the magnitude of this error, we conclude the error adversely affected the tortious interference verdicts. <u>See Herring v. Dep't of Soc. & Health Servs.</u>, 81 Wn. App. 1, 23, 914 P.2d 67 (1996) (an error is prejudicial if it presumably affects the outcome of trial); <u>O'Neill v. Dep't of Licensing</u>, 62 Wn. App. 112, 120, 813 P.2d 166 (1991) ("Erroneous instructions given on behalf of a party in whose favor the verdict is returned are presumed prejudicial unless it is affirmatively shown that they are harmless."). We also note that the trial evidence supporting tortious interference liability was scant at best. Our review of Mersha's testimony indicates he never testified about facts supporting his tortious interference

claim. <u>See</u> RP (July 25, 2012) at 73-139; RP (July 26, 2012) at 8-26. Belete testified that the defendants made a "false criminal accusation" against him that resulted in his arrest but testified about no other facts supporting his claim. RP (July 26, 2012) at 35.

We reverse the tortious interference verdicts and judgments and remand for new trial on liability and damages and without prejudice to conduct further discovery.

<u>Discovery</u>

Finally, we are troubled by the contentious discovery history in this case that resulted in a complete failure of meaningful discovery production as this record amply demonstrates. Although we refrain from assigning blame, unjustified and unreasonable resistance to production of any documents supporting damages is only one such example in this record.

Washington courts have repeatedly addressed the need for parties to cooperate in the discovery phase of litigation:

> The concept that a spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials is reflected in decisions of our Court of Appeals. In <u>Gammon v. Clark Equip. Co.</u>, 38 Wn. App. 274, 686 P.2d 1102 (1984), <u>aff'd</u>, 104 Wn.2d 613, 707 P.2d 685 (1985), the Court of Appeals held that a new trial should have been ordered because of discovery abuse by the defendant. Then Court of Appeals Judge Barbara Durham wrote for the court:
>> The Supreme Court has noted that the aim of the liberal federal discovery rules is to "make a trial less a game of blindman's b[l]uff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." The availability of liberal discovery means that civil trials
>>> no longer need be carried on in the dark. The way is now clear . . . for the parties to obtain the fullest possible knowledge of the issues and facts before trial.
>> This system obviously cannot succeed without the full cooperation of the parties. Accordingly, the drafters wisely included a provision authorizing the trial court to impose sanctions for unjustified or unexplained resistance to discovery.
> (Citations omitted.) <u>Gammon</u>, 38 Wn. App. at 280.

Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 342, 858 P.2d 1054 (1993). The discovery missteps here arguably denied the parties a fair contest and undermined the truth seeking process.

Fees and Costs

In their conclusion, defendants request "an award of their costs" on appeal. Resp't's Br. at 50. RAP 18.1(b) requires a party to devote a section of its brief to the request for fees or expenses. Defendants failed to do so. Nor do they cite any authority as a basis for fees and costs on appeal. See RAP 18.1(a); In re Marriage of Hoseth, 115 Wn. App. 563, 575, 63 P.3d 164 (2003) (party citing no authority for appellate attorney fees not entitled to fees). We deny their request.

CONCLUSION[16]

For the reasons discussed, we reverse the breach of contract and tortious interference verdicts and judgments in favor of plaintiffs and remand for a new trial on liability and damages and without prejudice to the parties to conduct further discovery. We otherwise affirm the trial court's injunctive relief order.

WE CONCUR:

---

[16] Given our disposition, we do not address the parties' remaining contentions.